**Melissa BENTON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 340, 1997.**

Supreme Court of Delaware.

Submitted: June 10, 1998.
Decided: June 29, 1998.

---

11. 19 *Del. C.* § 2122(a).

Edward C. Gill, Georgetown, for appellant.

Sam Glasscock, III, Department of Justice, Georgetown, for appellee.

Before VEASEY, C.J., HOLLAND and HARTNETT, JJ.

HOLLAND, Justice:

Following a jury trial in the Superior Court, the defendant-appellant, Melissa Benton ("Benton"), was convicted of Felony Theft and Falsifying Business Records. She was found to have embezzled funds in the course of her employment as an accounts receivable clerk. In this appeal, Benton does not contest the merits of her convictions. She only challenges the Superior Court's judgments with regard to the total amount of $21,450.65 in restitution that she was ordered to pay.

Benton contends that the Superior Court erred, as a matter of law, by ordering her to pay restitution in an amount that exceeded the State's evidence at trial. She argues, alternatively, that there was insufficient evidence to support the Superior Court's order of restitution. In a related claim, Benton submits that the Superior Court erred by ordering her to make restitution to her employer because her employer had signed a general release of all claims pursuant to its receipt of payment under an insurance surety bond. Benton also argues that the Superior Court's order of restitution constituted an excessive fine in violation of the Eighth Amendment to the United States Constitution. Finally, Benton argues that the Superior Court failed to consider her inability to repay the restitution it ordered.

We have carefully considered each of Benton's arguments. We have concluded that the record reflects no error. Accordingly, the judgment of the Superior Court is affirmed.

### Facts

In January 1995, Benton went to work as a bookkeeper for the Angola By The Bay Property Owners Association ("the Association"). The Association controls a housing development and resort in Sussex County. Its members are lot owners in the resort. The Association is responsible for the maintenance and upkeep of the common facilities at Angola By The Bay.

The Association receives a yearly assessment of $250 per lot from each property owner. It also receives revenue from boat slip rentals, boat ramp usage fees, boat rack rentals, pool passes and soft drink sales. During the time Benton was the bookkeeper, she was responsible for receiving payments for these fees and services, entering the amount received in the financial records of the Association, preparing deposit slips, and depositing the cash and checks in the Association's bank account.

Benton voluntarily left her employment at the Association in June 1995. Shortly after

she resigned, it was discovered that Benton had embezzled money from the Association. Benton's embezzlement scheme was explained by the evidence presented during the State's case at trial.

The record reflects that, when Benton received cash on behalf of the Association, she would frequently keep the money for herself. Benton was able to hide her embezzlement by a scheme known as "lapping." Pursuant to this scheme, Benton would note in the financial records of the Association that she had received a cash payment from a property owner or customer. In fact, however, Benton would convert the cash to her own use. The amount of cash embezzled would be replaced in the daily bank deposit with one or more payments by check from other property owners.[1] The "lapping" scheme delayed the discovery of Benton's thefts until property owners, who had made payments by check, realized that their accounts had not been given proper credit. The State's evidence at trial showed that Benton had stolen at least $2,300 from her employer.

Benton was convicted of Felony Theft and Falsification of Business Records. On October 25, 1996, Benton was sentenced to probation. She was also ordered to make restitution. Benton's original appeal from that sentence to this Court was voluntarily dismissed.

A restitution hearing was held on May 13 and July 10, 1997. The Superior Court determined that $2,300 had been misappropriated from the payments for lot assessments by Benton in her "lapping" scheme. The Superior Court concluded that a $100 traveler's check and a $155.45 Association check had been diverted to Benton's personal use.

The Superior Court also concluded that Benton had embezzled an additional amount of $1,589.20 from soda sales, $325 from pool passes, $225 from boat racks, $825 from marina stickers, and $425 from ramp stickers. The Superior Court aggregated the total theft from the Association by Benton at $5,994.65.[2] The Superior Court also determined that Benton should pay restitution for the following amounts, which reflect a portion of the fees the Association had paid its accountants: $6,660 to ascertain the amount stolen by Benton through the "lapping" scheme; $1,336 in expenses for trial preparation; and $7,460 for restoring the Association's financial records because of the damage done by Benton's falsifications.

In an amended sentencing order dated August 15, 1997, the Superior Court directed Benton to pay restitution in the total amount of $21,450.65. Prior to the Superior Court's order quantifying Benton's restitution, the Association had received the proceeds of a $10,000 bond under a policy of theft insurance, as a result of Benton's theft. Therefore, the Superior Court divided the restitution. The first $11,450.65 was ordered to be paid to the Association and the remaining $10,000 to the insurer.

### Restitution Amount Properly Exceeded Trial Evidence

Benton submits that the maximum amount of restitution she could be ordered to pay is limited to the evidence presented during her criminal trial. Therefore, Benton contends that the Superior Court erred by ordering her to pay an amount of restitution in excess of $2,300. Benton bases this claim on the trial testimony by an accountant for the Association. According to that accoun-

---

1. For example, if Benton received a $250 assessment payment in cash from property owner A, and a $250 property assessment payment by check from property owner B, she might credit property owner A with cash payment in the Association's books and on a deposit slip, but keep the cash for herself and actually deposit the $250 check from property owner B. Under a classic lapping scheme, once the funds are diverted for the embezzler's own use, successive accounting book entries are made to hide the defalcations by crediting those customers' accounts as paid, using subsequent payments in the same amounts but received from other customers.

2. The total amount the Superior Court found that Benton stole from the Association, as calculated from the record presented to this Court, is $5,944.65. Therefore, the total amount of restitution should have been $21,400.65. To avoid confusion, amounts and totals in this opinion will be those used by the Superior Court. To the extent there is an apparent discrepancy of $50 in the record, it should be examined by the Superior Court and corrected, if necessary.

tant, prior to trial he had only been able to determine that Benton had embezzled *at least* $2,300 and had attempted to conceal that theft by her "lapping" scheme.

Benton's contention disregards the legal distinction between evidence that is either relevant or necessary to establish the elements of an offense at a criminal trial and evidence that is admissible at a hearing to determine the appropriate amount of restitution. There is no constitutional or statutory mandate that the complete economic consequences of a defendant's illegal conduct be established at the criminal trial. In fact, the complete economic consequences of a crime would frequently be irrelevant and inadmissible during the criminal trial, *e.g.*, out-of-pocket losses and other expenses.[3] There are separately enumerated statutory factors, however, which either permit or require the complete economic ramifications of the convicted defendant's illegal conduct to be taken into account by the sentencing judge for purposes of ordering restitution.[4]

Benton was charged with Falsification of Business Records[5] and Felony Theft.[6] The State met its burden by proving the elements of those offenses at the criminal trial. The State presented evidence that Benton had embezzled *more than* $500 from the Association and had falsified records in order to conceal her theft. The jury was convinced, beyond a reasonable doubt, that Benton was guilty of both crimes.

The Delaware Criminal Code imposes separate statutory responsibilities upon the Superior Court for the purposes of sentencing. Section 841(d) provides that, "[u]pon conviction, the sentencing judge shall require full restitution to the victim for any monetary losses suffered ...." Accordingly, Section 4106(b) directs the sentencing judge to "determine the nature and amount of restitution,

if any, to be made to each victim of the crime of each convicted offender."

The statutory criteria for making that determination are set forth in Section 4106(a):

[a]ny person convicted ... shall be liable to each victim of the offense for the value of the property or property rights lost to the victim and for the value of any property which has diminished in worth as a result of the actions of such convicted offender and shall be ordered by the court to make restitution. If the court does not require that restitution be paid to a victim, the court shall state its reason on the record. The convicted offender shall also be liable for direct out-of-pocket losses, loss of earnings and other expenses and inconveniences incurred by victim as a direct result of the crime ....[7]

Thus, the statutory scheme for restitution expressly provides for the victim to recover for the value of the property rights lost or diminished by the defendant's criminal conduct, *as well as* "direct out-of-pocket losses, loss of earnings and other expenses and inconveniences."[8]

In determining the amount of restitution to order for the total actual theft by Benton, the Superior Court relied upon the testimony of the Association's accountant, who had also testified at the criminal trial, and the testimony of the Association's president. The accountant had testified, based on his pretrial review of the Association's financial records, that Benton had embezzled at least $2,300. At the restitution hearing, the president of the Association described the posttrial calculations which reflected Benton's embezzlement of more than $3,600 in additional money from the Association. The Superior Court properly admitted evidence re-

3. *See* D.R.E. 401, 403.

4. *See e.g.*, 11 *Del. C.* ch. 41.

5. To convict Benton of Falsifying Business Records, the State had to establish, beyond a reasonable doubt, that: Benton made a false entry in the Association's business records, and the false entry was made with the intent to defraud the Association. 11 *Del. C.* § 871.

6. To convict Benton of Felony Theft, the State had to establish, beyond a reasonable doubt, that: Benton took property of the Association, with the intent to appropriate the property to her own use, and the value of that property was greater than $500. 11 *Del. C.* § 841.

7. 11 *Del. C.* § 4106(a).

8. 11 *Del. C.* § 4106(a).

garding the full amount of Benton's actual theft at the restitution hearing.[9]

In addition to restitution for the total amount stolen, Section 4106(a) contemplates that a restitution award will include compensation to the victim for out-of-pocket losses and other expenses directly resulting from the defendant's criminal acts. The Superior Court's restitution order included the $7,460 accountant's fee charged for the reconstruction of the Association's financial records that had been falsified by Benton as part of her embezzlement scheme. The Superior Court also ordered for restitution of 90% of the accountant's fee required to determine the extent of the money missing as part of the lapping scheme ($6,660) and one-half of the amount charged by the Association's accountants to prepare for trial ($1,336). The total accountant's fee included in the Superior Court's order of restitution was $15,456.[10]

■ The Superior Court correctly concluded that Section 4106(a) authorized it to order restitution for the accounting fees incurred by the Association. The record reflects that those out-of-pocket expenses were incurred as a result of Benton's theft from the Association and her falsification of the Association's business records. In cases of embezzlement, accounting fees for restoration of financial records and preparation of the case against the defendant are properly awarded to the victim as part of the amount of restitution for out-of-pocket expenses.[11]

### Determining Restitution Preponderance of Evidence

■ Benton argues that there was insufficient evidence to support the restitution portion of the Superior Court's sentencing order. The United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment allows different standards of proof to establish guilt at a criminal trial and to sustain a sentencing order.[12] At a criminal trial, the burden is on the State to present evidence that the defendant is guilty beyond a reasonable doubt.[13] At sentencing, restitution may be based on those factors which are established by a preponderance of the evidence.[14]

The Superior Court ordered that Benton pay restitution in the total amount of $21,450.65: $5,994.65 for the actual amounts that she was found to have stolen from the Association; $6,660 in accounting fees paid by the Association in investigating her embezzlement; $7,460 for reconstruction of the Association's business records; and $1,336 for the "litigation aspect" of the costs paid by the Association. The record reflects that each component of the Superior Court's restitution order, in the total amount of $21,450.65, was established by a preponderance of the evidence.[15]

### Restitution Unaffected Insurance Payment and Release

The Association had purchased an insurance bond which provided coverage against

---

**9.** 11 *Del. C.* § 4106(a). *See Pratt v. State*, Del. Supr., 486 A.2d 1154 (1983); *Moore v. State*, Del.Supr., 673 A.2d 171, 172 (1996).

**10.** The Superior Court concluded that it was authorized by Section 4106(a) to award all of the Association's accounting fees, but exercised its discretion to allow only half of the amount paid in connection with the accountant's preparation of the case for trial and deducted ten percent from the fee related to determining the amount of loss. The latter reduction was based on the Superior Court's determination that some of these accounting fees may have been incurred independently of Benton's theft because of her poor bookkeeping practices.

**11.** *Accord Glaubius v. State*, Fla.Supr., 688 So.2d 913, 915–16 (1997); *State v. Taylor*, Iowa Supr., 506 N.W.2d 767 (1993). *See Wyatt v. State*, Del.

Supr., 498 A.2d 1088, 1090 (1985); *People v. Duvall*, Colo.App., 908 P.2d 1178 (1995).

**12.** *McMillan v. Pennsylvania*, 477 U.S. 79, 91–92, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).

**13.** *In re Winship*, 397 U.S. 358, 361–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *See also Monroe v. State*, Del.Supr., 652 A.2d 560, 563 (1995).

**14.** *McMillan v. Pennsylvania*, 477 U.S. at 91–92, 106 S.Ct. 2411. *See United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 637–38, 136 L.Ed.2d 554 (1997). *See also Schiro v. Farley*, 510 U.S. 222, 243 n. 4, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994) (Stevens, J., dissenting).

**15.** *See Moore v. State*, 673 A.2d at 173; *Mayes v. State*, Del.Supr., 604 A.2d 839, 842–43 (1992); *Pratt v. State*, 486 A.2d at 1159–60.

employee theft in a maximum limit of $10,000. The insurer determined that the Association's loss, as a result of Benton's embezzlement, exceeded the policy limits. Accordingly, the insurer paid the Association the maximum limits of $10,000 pursuant to the bond. In connection with its receipt of that insurance payment, the Association signed a release of its claim under the bond which stated, in part:

> In further consideration of said payment, the [Association] does hereby release and forever discharge said Selective Insurance Company of America from any and all liability, claim and demand under the Bond # B821648 furnished on behalf of Angola By The Bay Property Owners Association I.

Benton contends that the foregoing language constitutes a general release, which operated in her favor for purposes of determining restitution. According to Benton, under the terms of the general release, the Superior Court was prevented from ordering restitution in favor of either the Association or its insurer.

The release at issue in this appeal specifically refers to the bond, under which the insurer was contractually liable to the Association, and not to any direct claims the Association had arising from Benton's theft. The only claims released by the Association were those arising from that bond against its insurer, Selective Insurance Company of America. Moreover, the release provided for an assignment of the Association's direct right of civil recovery against the miscreant, Benton, in favor of the insurer.

■ This Court has recognized that an injured or aggrieved party can give a general release that inures to the benefit of third party strangers to that document.[16] The terms of the release in this case, however, demonstrate that it is a special release of the insurer.[17] Thus, it does not operate as a general release to relieve Benton from either civil liability or the obligation to make restitution for her criminal conduct.[18]

The Superior Court properly held that the Association's release of its insurance carrier's obligation under the bond did not preclude the entry of an order for Benton to make full restitution. The amount of the theft by Benton, together with the Association's out-of-pocket loss, was $21,450.65. Because $10,000 of this loss had already been paid by the Association's insurer, the Superior Court divided its restitution award.[19] The first $11,450.65 was to be paid to the Association. The remainder was to be paid to the insurer.[20] That apportionment is consistent with this Court's prior holdings.[21]

### Restitution Amount Proportionate to Crime

Benton argues that the amount of restitution ordered by the Superior Court should be evaluated by this Court as a fine. Based upon that premise, Benton contends that the $21,450.65 in restitution she was ordered to make was so disproportionate to the crimes for which she was convicted that it violated the prohibition against excessive fines in the

---

16. *See Chakov v. Outboard Marine Corp.,* Del. Supr., 429 A.2d 984, 985–86 (1981).

17. In contrast, the language of the general release in *Chakov* read, in part:
the undersigned hereby releases and forever discharges [the tortfeasor] ... and all other persons, firms or corporations liable or who might be claimed to be liable ... from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from [the] accident....
*Chakov v. Outboard Marine Corp.,* 429 A.2d at 985. *Cf. Adams v. Jankouskas,* Del.Supr., 452 A.2d 148, 155–56 (1982).

18. *Cf. Locklear v. State,* Del.Supr., 692 A.2d 898, 901 (1997) (restitution order credited for civil recovery).

19. *Cf. Locklear v. State,* Del.Supr., 692 A.2d 898 (1997).

20. Under Delaware law, a loss insurer is considered a "victim," and can therefore be awarded restitution. *Pratt v. State,* Del.Supr., 486 A.2d 1154, 1160 n. 4 (1983).

21. *Pratt v. State,* 486 A.2d at 1161 ("Restitution should cover the victim's own out-of-pocket expenses and losses as a first priority; losses covered by insurance are the lowest priority").

Eighth Amendment of the United States Constitution. The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." [22]

■ The Excessive Fines Clause in the Eighth Amendment was taken verbatim from the English Bill of Rights of 1689.[23] When the Eighth Amendment was adopted "the word 'fine' was understood to mean a payment to a sovereign as punishment for some offense." [24] Accordingly, the Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind 'as *punishment* for some offense.' " [25]

Until this week when it decided *Bajakajian*, the United States Supreme Court has only occasionally interpreted and never actually applied the Excessive Fines Clause.[26] In *Bajakajian*, for the first time in history, a fine was held to be excessive under the Eighth Amendment.[27] The majority and dissenting opinions in the 5–4 *Bajakajian* decision have provided timely guidance for this Court.

■ The record reflects the order of restitution in Benton's case was neither punitive nor to be paid for the benefit of a sovereign. The purpose of the order of restitution was remedial and compensatory. It was intended to protect the innocent victim of Benton's criminal conduct from financial loss rather than to "vindicate public justice." [28] Accordingly, we have concluded that the Superior Court's order of restitution was not a punitive fine at all and *a fortiori* was not imposed in violation of the Eighth Amendment.[29]

Alternatively, we will assume arguendo that the order of restitution in Benton's case did constitute punishment and was a "fine" within the meaning of the Excessive Fines Clause of the Eighth Amendment. In *Bajakajian*, the majority concluded that "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." [30] Therefore, the United States Supreme Court held "that a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportionate to the gravity of a defendant's offense." [31]

■ The Superior Court's restitution order was based directly on the actual losses caused to the Association by Benton's criminal acts. The order of restitution in Benton's case compensated the innocent victim of her crime, albeit paid through the probation office of the government, for: the amount of money she had embezzled; the ancillary costs to the Association in detecting her crimes; and costs to the Association for restoring the property damage that was caused by Benton's criminal acts.[32] As a result, the Superior Court's restitution order was proportionate to Benton's conduct:

22. U.S. Const. amend. VIII.

23. *Browning–Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 267, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989).

24. *Browning–Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. at 265, 109 S.Ct. 2909.

25. *Austin v. United States*, 509 U.S. 602, 609–10, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (citation omitted).

26. *United States v. Bajakajian*, —— U.S. ——, ——–——, 118 S.Ct. 2028, 2032–33, 141 L.Ed.2d 314 (1998).

27. *Id.*

28. *Marcus v. Hess*, 317 U.S. 537, 548–49, 63 S.Ct. 379, 87 L.Ed. 443 (1943).

29. See *United States v. Bajakajian*, —— U.S. ——, ——–——, 118 S.Ct. 2028, 2042–44, 141 L.Ed.2d 314 (1998). ("As a rule, forfeitures of criminal proceeds serve the nonpunitive ends of making restitution to the rightful owners . . . .") (citing *United States v. Ursery*, 518 U.S. 267, 284, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996)).

30. *United States v. Bajakajian*, —— U.S. ——, ——–——, 118 S.Ct. 2028, 2035–36, 141 L.Ed.2d 314 (1998).

31. *Id.*

32. See *Marcus v. Hess*, 317 U.S. at 551–52, 63 S.Ct. 379. See also *United States v. Halper*, 490 U.S. 435, 445, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) and One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 237, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972).

Where the amount of restitution is geared directly to the amount of the victim's loss caused by the defendant's illegal activity, proportionality is already built in to the order .... By choosing [the] target, the defendant is the one who essentially determines [the] restitution obligation.[33]

Accordingly, we hold that the Excessive Fine Clause was not violated by ordering Benton to repay not only the full amount of money that she had embezzled from the Association but also the out-of-pocket expenses sustained by the Association as a direct consequence of Benton's criminal conduct.[34]

### *Inability to Pay*
### *No Plain Error*

█ Finally, Benton contends the Superior Court abused its discretion by ordering her to pay full restitution of $21,450.65, because she is unable to pay that amount. In *Pratt*, this Court determined that "[t]he defendant's ability to pay is an element to be considered in determining the amount of restitution and the schedule of payments."[35] Benton, however, failed to raise this issue at the restitution hearing. Benton had the burden of proving, by a preponderance of the evidence, those financial needs and lack of resources which she contended were relevant to her inability to make restitution.[36]

█ At this point in the proceedings, Benton must show plain error to obtain relief from the order of restitution.[37] To establish plain error, the burden is on the defendant to demonstrate that the error affected a substantial right or resulted in manifest injustice.[38] Benton, did not provide the Superior Court or this Court with any factual basis to support her alleged inability to pay the amount of restitution that was ordered. Consequently, she has failed to carry her burden of demonstrating plain error.[39]

### *Conclusion*

The judgment entered by the Superior Court, pursuant to its amended sentencing order, is affirmed.

---

33. *United States v. Dean,* D.Ore., 949 F.Supp. 782, 785 (1996).

34. *Cf. United States v. Bajakajian,* —— U.S. ——, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998).

35. *Pratt v. State,* Del.Supr., 486 A.2d 1154, 1161 (1983). *See Locklear v. State,* Del.Supr., 692 A.2d 898, 901–02 (1997).

36. *Accord United States v. Graham,* 3d Cir., 72 F.3d 352, 356 (1995).

37. Supr. Ct. R. 8.

38. *Wainwright v. State,* Del.Supr., 504 A.2d 1096, 1100 (1986).

39. Supr. Ct. R. 8.