COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Annunziata and
          Senior Judge Coleman
Argued at Richmond, Virginia


CHARLES L. LANDES
                                        OPINION BY
v.    Record No. 0329-01-2         JUDGE SAM W. COLEMAN III
                                       MARCH 26, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ORANGE COUNTY
                    Daniel R. Bouton, Judge

        John R. Maus for appellant.

        Leah A. Darron, Assistant Attorney General
        (Randolph A. Beales, Attorney General, on
        brief), for appellee.


     The appellant, Charles L. Landes, contends the evidence is

insufficient to support his conviction for fraudulent conversion

of a piece of farm machinery for which he had executed a security

agreement at the time of its purchase.  He further contends that

the trial court erred by requiring as a condition of the suspended

sentence that he make restitution in the amount of $7,500, the

unpaid secured purchase price, rather than $950, the actual value

of the damaged machinery.  Finding the evidence sufficient and the

restitution amount proper, we affirm the trial court's judgment.

                I.  Sufficiency of the Evidence

     Code § 18.2-115 provides, in pertinent part:

        Whenever any person is in possession of any
        personal property . . . the title or

ownership of which he has agreed in writing shall be or remain in another, or on which he has given a lien, and such person so in possession shall fraudulently . . . remove such property from the premises where it has been agreed that it shall remain, and refuse to disclose the location thereof, or otherwise dispose of the property or fraudulently remove the same from the Commonwealth without the written consent of the owner or lienor or the person in whom the title is . . . he shall be guilty of larceny thereof.

Code § 18.2-115 further provides that a lienor's refusal to disclose the location of the property upon demand of the secured party or lienholder constitutes prima facie evidence of a violation.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

So viewed, the evidence proved that Landes purchased several pieces of farm machinery from Gilbert Implement, Inc., a farm equipment company operated by George Gilbert. Among the items Landes purchased was a 4610 Gehl skid loader with a diesel engine. Landes financed the purchase through "John Deere Credit" with a "John Deere finance contract," admitted into evidence as Commonwealth's Exhibit #1. The finance contract did not contain the terms of the security agreement. However, Gilbert testified that Landes executed a security agreement and

-

that the terms of the security agreement were "equivalent" to those set forth in the security agreement form that was currently being used by John Deere, a copy of which was introduced into evidence as Commonwealth's Exhibit #2. Commonwealth's Exhibit #2 was admitted to prove the terms of the security agreement signed by Landes and the security interest retained by John Deere and Gilbert Implement, Inc. Under the terms of the security agreement, the skid loader was to be kept at Landes's farm in Prince William County. The security agreement provided that upon default by Landes, John Deere would have full recourse against Gilbert Implement, Inc.

At some point after Landes financed the purchase of the skid loader, he suffered financial reversals and declared bankruptcy. As a result of the bankruptcy, he was able to reschedule the payments so that he could retain the skid loader. Under the recourse provisions of the security agreement, if Landes failed to make the payments, Gilbert had to pay "John Deere Credit" and then Gilbert "step[s] into their place in terms of rights, remedies." During July 1999, "John Deere Credit" notified Gilbert that Landes had failed to make his payments and that they were going to charge Landes's debt of $15,002.69 to Gilbert, which they did on August 16, 1999.

Thereafter, Gilbert attempted unsuccessfully to contact Landes and repossess the equipment. Eventually, Gilbert spoke with Landes and informed him that he was repossessing the

-

equipment. Landes responded, "No way, I'm not giving you the equipment." Gilbert informed Landes that his only option was to pay the balance owed for the equipment. Landes stated he would "see" what he could do. When Gilbert next contacted Landes, Landes stated he "couldn't pay or wouldn't pay at that time." The third time Gilbert contacted Landes, Landes said the skid loader "had caught fire and burned." Gilbert was unsuccessful in locating the skid loader on Landes's farm in Prince William County, where the security agreement specified it was to be located. Landes did not obtain permission from John Deere or Gilbert to move the skid loader to any other location. As of the trial date, Landes had refused to tell Gilbert the location of the equipment.

In a statement to Investigator Dan Call in September 1999, Landes claimed the skid loader had burned and that he had sold it for $200. Landes told Call he did not recall to whom he had sold the loader or how he had transported it. Landes provided no documentation of the sale. In later interviews with Call in December 1999, Landes admitted he had taken the skid loader to a farm equipment dealer in Pennsylvania about seven months earlier. Call confirmed that Landes had taken the skid loader to Pennsylvania and "traded [it] in" for a $2,500 credit towards the purchase of other equipment.

At trial, Landes admitted he purchased the skid loader from Gilbert and financed it through "John Deere Credit." Landes

-

acknowledged that he defaulted in paying for the skid loader.

Landes claimed he attempted to return the skid loader to Gilbert

after it burned, but Gilbert refused to accept it.  Landes

testified that he then moved the burned skid loader to

Pennsylvania because he could not keep burned equipment in

Prince William County and it no longer had any value.  At the

sentencing hearing, Landes introduced evidence that the salvage

value of the burned loader was $950.

"The credibility of the witnesses and the weight accorded

the evidence are matters solely for the fact finder who has the

opportunity to see and hear that evidence as it is presented."

Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730,

732 (1995).  The Commonwealth's evidence proved that Landes

purchased the skid loader and financed the purchase price with a

security agreement through John Deere with full recourse against

Gilbert Implement, Inc.  In the security agreement, Landes

agreed to keep the equipment in Prince William County and upon

default to deliver it to the lienholder.  Upon default, Landes

refused to surrender the skid loader when Gilbert demanded it or

to disclose its location.  Landes admitted he was in default on

the loan and that he had moved the skid loader from Prince

William County to Pennsylvania, without Gilbert's permission,

where he sold it for credit on the purchase of other equipment.

While Landes contends the burned equipment was worth little or

no value, the evidence proved he received a $2,500 credit for

-

it. In either event, the evidence proved it had value and that Landes was required to deliver it to the lienholder upon demand, to keep it in Prince William County, and not to remove it without written consent. Accordingly, Landes violated the provisions of the security agreement and of Code § 18.2-115. The evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant fraudulently converted the property by removing it from Prince William County without permission and disposing of the secured property in violation of the security interest.

## II. Restitution

Code § 19.2-305.1(C) provides that "[a]t the time of sentencing, the court, in its discretion, shall determine the amount to be repaid by the defendant." Code § 19.2-305.2 permits a sentencing court to order restitution, if the return of the property is impossible or impractical, by paying "an amount equal to the greater of the value of the property at the time of the offense or the value of the property at the time of sentencing." "The burden of proving the amount of the loss for purposes of restitution is by the preponderance of the evidence." Alger v. Commonwealth, 19 Va. App. 252, 258, 450 S.E.2d 765, 768 (1994) (citations omitted).

The appellant contends the value of the burned skid loader was no more than $950 and that under Code § 19.2-305.2 the court could not require that he pay restitution greater than that

-

amount.  The initial contract price for the equipment that Landes purchased was in the range of $33,000, with approximately one-half of that amount representing the price of the skid loader.  The balance charged back to Gilbert upon default was $15,002.69, with the balance owing on the skid loader representing one-half of that value, or approximately $7,500. In the pre-sentence report, Gilbert indicated that the value of the skid loader was $7,500.

"[T]he legislature intended that the victim impact statement be used by the trial judge to determine the amount of restitution."  Id. at 259, 450 S.E.2d at 769.  Furthermore, the restitution statute, Code § 19.2-305.2, provides that where return of the property is impossible or impractical the amount of restitution shall be "the greater of the value of the property" at the time of the offense or at sentencing.  The trial court did not abuse its discretion by determining that the value of property, which was fraudulently converted in violation of a security agreement, was the unpaid secured balance owed on the equipment, rather than the diminished value of damaged or destroyed property.

For these reasons, we affirm Landes's conviction for fraudulent conversion of property and affirm the restitution order.

Affirmed.

-