2004 ND 137

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Christopher GILL, Defendant and Appellant.**

**No. 20030279.**

Supreme Court of North Dakota.

June 30, 2004.

Julie Ann Lawyer, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee.

Todd A. Schwarz, Schwarz Law Office, Bismarck, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1]  Christopher Gill appealed from an amended order deferring imposition of sentence on his plea of guilty to class C felony theft of property.  We conclude the district court did not abuse its discretion in ordering that Gill pay $4,120 in restitution, and we affirm.

I

[¶ 2]  In January 2002, Gill became assistant manager of gaming operations for the North Dakota Association for the Disabled ("Association") at Chips Casino & Lounge in Bismarck.  During March 2002, the chief financial officer for the Association began noticing large discrepancies in the amount of money taken in from gaming operations at Chips, and Gill was eventually charged with theft of property valued in excess of $500.  On May 19, 2003, Gill pled guilty to the charge, and he received a deferred imposition of sentence. Following a restitution hearing on September 10, 2003, Gill was ordered to make restitution in the amount of $4,120 "with monthly payments to be determined by the probation officer based on the Defendant's ability to pay."  Gill appealed.

## II

[¶ 3]   On appeal, Gill argues the district court erred in setting the amount of restitution at $4,120.

[¶ 4]   Under N.D.C.C. § 12.1–32–08(1), courts have the authority to order a criminal defendant to pay restitution:

1.   Before imposing restitution or reparation as a sentence or condition of probation, the court shall hold a hearing on the matter with notice to the prosecuting attorney and to the defendant as to the nature and amount thereof.   The court, when sentencing a person adjudged guilty of criminal activities that have resulted in pecuniary damages, in addition to any other sentence it may impose, shall order that the defendant make restitution to the victim or other recipient as determined by the court, unless the court states on the record, based upon the criteria in this subsection, the reason it does not order restitution or orders only partial restitution.   In determining whether to order restitution, the court shall take into account:

a.   The reasonable damages sustained by the victim or victims of the criminal offense, which damages are limited to those directly related to the criminal offense and expenses actually incurred as a direct result of the defendant's criminal action. . . .

b.   The ability of the defendant to restore the fruits of the criminal action or to pay monetary reparations, or to otherwise take action to restore the victim's property.

c.   The likelihood that attaching a condition relating to restitution or reparation will serve a valid rehabilitational purpose in the case of the particular offender considered.

The court shall fix the amount of restitution or reparation, which may not exceed an amount the defendant can or will be able to pay, and shall fix the manner of performance of any condition or conditions of probation established pursuant to this subsection.

[¶ 5]   Our court's review of a restitution order is limited to whether the district court acted within the limits set by statute, which is similar to the abuse of discretion standard.   *State v. Bingaman,* 2002 ND 210, ¶ 4, 655 N.W.2d 57; *State v. Kensmoe,* 2001 ND 190, ¶ 7, 636 N.W.2d 183.   A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law.   *Bingaman,* at ¶ 4; *Kensmoe,* at ¶ 7.

### A

[¶ 6]   Although "there must exist an immediate and intimate causal connection between the criminal conduct and the damages or expenses for which restitution is ordered," *State v. Pippin,* 496 N.W.2d 50, 53 (N.D.1993), N.D.C.C. § 12.1–32–08 does not specify the burden of proof required to establish restitution, and we have not addressed the question.

[¶ 7]   The United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment allows different standards of proof to establish guilt at a criminal trial and to sustain a sentencing order, and that application of the preponderance of the evidence standard at sentencing generally satisfies due process.   *See United States v. Watts,* 519 U.S. 148, 156–57, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997); *McMillan v. Pennsylvania,* 477 U.S. 79, 91–92, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).   Courts have overwhelmingly concluded that restitution may

be based on facts which are established by a preponderance of the evidence. *See, e.g., Noffsinger v. State,* 850 P.2d 647, 650 (Alaska App.1993); *In re Stephanie B.,* 204 Ariz. 466, 65 P.3d 114, 118 (2003); *People v. Baumann,* 176 Cal.App.3d 67, 222 Cal. Rptr. 32, 39 (1985); *Benton v. State,* 711 A.2d 792, 797 (Del.1998); *Bakos v. State,* 698 So.2d 943, 944 (Fla.App.1997); *Lawrenz v. State,* 194 Ga.App. 724, 391 S.E.2d 703, 704 (1990); *State v. Wagner,* 484 N.W.2d 212, 216 (Iowa App.1992); *Landes v. Commonwealth,* 37 Va.App. 710, 561 S.E.2d 37, 40 (2002); *Renfro v. State,* 785 P.2d 491, 493 (Wyo.1990); *see also* 5 W. LaFave, J. Israel, N. King, *Criminal Procedure* § 26.6(c) (2d ed.1999). In some jurisdictions, courts have noted the preponderance of the evidence standard is dictated by statute. *See, e.g., United States v. Palma,* 760 F.2d 475, 480 (3d Cir.1985); *Commonwealth v. Nawn,* 394 Mass. 1, 474 N.E.2d 545, 550 (1985); *State v. Terpstra,* 546 N.W.2d 280, 281 (Minn. 1996). *Compare* N.D.R.Crim.P. 32(f) (providing prosecution shall establish violation of a condition of probation by a preponderance of the evidence). We conclude the State has the burden in a restitution hearing to prove the amount of restitution by a preponderance of the evidence.

### B

[¶ 8] Gill argues the evidence was insufficient to support the $4,120 in restitution he was ordered to pay.

[¶ 9] A restitution hearing was held after Gill pled guilty to the crime. The chief financial officer for the Association testified that in March 2002 she began noticing unusual discrepancies between the amount of money reported to have been taken in and the amount actually collected in the drop boxes by dealers on the paddlewheel and blackjack tables at the Chips gaming site. Although it was not unusual to see $20 discrepancies in the amounts reported and actually collected, the chief financial officer found that between February 28, 2002, and March 22, 2002, hundreds of dollars were missing from the drop boxes on various days. She testified $300 was missing on February 28, $304 was missing on March 9, $568 was missing on March 11, $681 was missing on March 12, $796 was missing on March 15, $814 was missing on March 16, $982 was missing on March 18, and $674 was missing on March 22.

[¶ 10] Hidden video surveillance cameras revealed Gill, on March 22, turning off the regular video surveillance system, accessing the safe, and taking money from the drop boxes. Surveillance videos also showed Gill walking into Chips on two occasions and the videotape of the safe room turned off shortly thereafter. Video surveillance cameras did not record anyone else taking money out of the safe. After seeing the tape showing Gill removing money from the drop boxes, police were contacted and Gill was called in for questioning. At that time Gill turned over $1,000 to the police, even though only $674 was reported to be missing on that date.

[¶ 11] Gill testified that he had taken the $1,000 for the purpose of using the money to make up differences discovered in the pull tab jars, which "were not meeting state standards for percentage." Gill claimed that he took only $1,000 and that other Association employees with access to the money must have taken the remainder of the missing funds. After Gill was terminated from employment with the Association, no other unusual discrepancies were discovered.

[¶ 12] The Association claimed a total of $5,120 had been taken during the relevant time period. The district court found Gill had taken the total amount of $5,120 and ordered that he make restitution of

$4,120, accounting for the $1,000 he had already returned to the police. We conclude there is sufficient circumstantial and direct evidence to support the court's order requiring Gill to pay $4,120 in restitution.

### C

■ [¶ 13]   Gill also argues the district court erred in failing to make a finding that he had the financial ability to pay the $4,120 amount of restitution.

[¶ 14]   Under N.D.C.C. § 12.1–32–08(1), a court "shall fix the amount of restitution or reparation, which may not exceed an amount the defendant can or will be able to pay." Other jurisdictions, either by statute or by judicial decision, place the burden upon the defendant to raise and prove an inability to pay restitution. *See, e.g., United States v. Castner,* 50 F.3d 1267, 1277 n. 9 (4th Cir.1995); *United States v. Morrison,* 938 F.2d 168, 172 (10th Cir.1991); *Benton,* 711 A.2d at 800; *Dickens v. State,* 556 So.2d 782, 785 (Fla.App. 1990); *State v. Goeller,* 276 Kan. 578, 77 P.3d 1272, 1276 (2003); *State v. Hval,* 174 Or.App. 164, 25 P.3d 958, 968 (2001); *State v. Boffer,* 158 Wis.2d 655, 462 N.W.2d 906, 910 (1990). Courts have further held that the defendant bears the burden of proving inability to pay in revocation proceedings based on failure to pay the ordered restitution. *See, e.g., People v. McPherson,* 897 P.2d 923, 927 (Colo.App.1995); *State v. Jones,* 78 N.C.App. 507, 337 S.E.2d 195,

197 (1985); *Stanfield v. State,* 718 S.W.2d 734, 737 (Tex.Crim.App.1986); *Keselica v. Commonwealth,* 34 Va.App. 31, 537 S.E.2d 611, 613 (2000). Gill has not cited any authority to the contrary. We conclude Gill had the burden to raise and prove an inability to pay the restitution ordered.

[¶ 15]   Gill neither claimed inability to pay nor offered any evidence of his financial resources in the district court. We, therefore, conclude Gill cannot now complain that the district court erred in failing to consider his financial circumstances. *See Benton,* 711 A.2d at 800; *Dickens,* 556 So.2d at 785; *Goeller,* 77 P.3d at 1276; *Boffer,* 462 N.W.2d at 910.

[¶ 16]   We conclude the district court did not abuse its discretion in ordering Gill to pay restitution in the amount of $4,120.

### III

[¶ 17]   The amended order deferring imposition of sentence is affirmed.

[¶ 18]   GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.