2008 ND 70

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Melissa Victoria GENDRON, Defendant and Appellant.**

**No. 20070199.**

Supreme Court of North Dakota.

April 17, 2008.

Justin Jon Schwarz, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Kent M. Morrow, Bismarck, ND, for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Melissa Gendron appeals the district court's order requiring payment of $7,963.52 in restitution arising out of Gendron's guilty plea to theft of property, a class C felony. Gendron argues the district court erred in determining the amount of restitution by not considering the value of merchandise she returned to the store. Gendron also claims the district court's order results in double recovery because some of the stolen items were accounted for twice. We conclude the district court did not abuse its discretion when it determined the restitution amount, and the district court's order is affirmed.

I

[¶ 2] On December 12, 2006, an assistant manager at Kohl's department store in Bismarck received an anonymous phone call reporting a theft. The loss-prevention supervisor reviewed the store's security tapes, which showed a cashier, Gendron, discounting merchandise without authorization and pretending to ring up merchandise without actually charging customers for the items. Gendron admitted to the theft when confronted by Kohl's loss-prevention manager. Gendron handwrote and signed a statement acknowledging she allowed "people to receive free merchandise without them paying." She stated she would "get as much of the merchandise back or will pay for any/all merchandise.... The final total of the shortages are [sic][$]7543.43. I am willing to pay it all [b]ack." Gendron was taken into custody by law enforcement.

[¶ 3] Gendron pleaded guilty to theft of property on March 13, 2007. A restitution hearing was held on June 21, 2007, at which time the State requested Gendron pay Kohl's $7,963.52. There is no formal accounting of the stolen items; instead, a series of documents generated by Kohl's loss-prevention team was admitted into evidence. These documents consist of "journal roll entr[ies] and receipts" from the cash register equipment and notes assembled by the team enumerating the stolen items. The staff at Kohl's determined the value of the stolen merchandise by comparing the journal roll entries to the security tapes. Kohl's contends Gendron perpetrated fifteen incidents of theft between November 28, 2006 and December 12, 2006. Notes on the journal roll entries

indicate the value of merchandise that was improperly discounted and the value of merchandise that was given to customers without being scanned. The journal entry and receipt system offered by Kohl's is not precise; some of the values are approximate. The total value of stolen merchandise documented by the journal roll entries and the employee observations of the security tape is $8,109.50.

[¶ 4] Gendron claims she returned much of the merchandise subsequent to the confrontation with the loss-prevention manager. A report authored by the loss-prevention supervisor indicates Gendron's sister returned $222.40 worth of merchandise on December 15, 2006. Gendron testified that the day after her arrest, she returned approximately $100 worth of merchandise to a police detective. Gendron claims she also returned $2,696.33 worth of merchandise on or about December 20, 2006. According to Gendron, many of these items had price tags attached and were in perfect condition. She claims she arrived at the $2,696.33 total by adding up the prices listed on the price tags. Gendron also offered into evidence a compact disc containing pictures showing the purported condition of the merchandise when it was returned. At the hearing, Gendron argued the value of the returned merchandise should be deducted from the total amount of restitution. Gendron requested a deduction of an additional $2,093.66 because she disputes Kohl's assessment of the journal roll entries. She claims several items were listed twice on the journal roll entries and were valued as two separate items. Thus, Gendron argued, Kohl's recovered twice for the same item.

[¶ 5] Kohl's contends much of the returned merchandise was not fit for sale because it was used, dirty or out of stock. A loss-prevention manager testified the police held the returned merchandise as evidence and, when it was finally returned to the store, the products were no longer "in [the] system" and therefore could not be sold. These items were returned to Kohl's distribution center. The manager did not know whether the merchandise was ultimately sold or destroyed. Kohl's contends only $145 worth of merchandise was saleable. In its restitution request, Kohl's deducted $145 from the total value of stolen items.

[¶ 6] The district court ordered $7,963.52 in restitution consistent with Kohl's request. The order does not indicate any factual findings or other underlying considerations for the restitution award. Gendron claims the district court abused its discretion by ordering that she pay $7,963.52 because the court did not act within the limits of N.D.C.C. § 12.1–32–08, which controls payment of restitution.

## II

[¶ 7] Restitution orders will be affirmed unless the district court acted outside the limits set by statute, which is similar to an abuse of discretion standard. *State v. Tupa*, 2005 ND 25, ¶ 3, 691 N.W.2d 579. "A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law." *Id.*

[¶ 8] Section 12.1–32–08(1), N.D.C.C., states, in pertinent part,

"1. Before imposing restitution or reparation as a sentence or condition of probation, the court shall hold a hearing on the matter with notice to the prosecuting attorney and to the defendant as to the nature and amount of restitution. The court, when sentencing a person adjudged guilty of criminal activities that

have resulted in pecuniary damages, in addition to any other sentence the court may impose, shall order that the defendant make restitution to the victim or other recipient as determined by the court, unless the court states on the record, based upon the criteria in this subsection, the reason it does not order restitution or orders only partial restitution. . . . In determining whether to order restitution, the court shall take into account:

"a. The reasonable damages sustained by the victim or victims of the criminal offense, which *damages are limited to those directly related to the criminal offense and expenses actually incurred* as a direct result of the defendant's criminal action. . . .

"b. The ability of the defendant to restore the fruits of the criminal action or to pay monetary reparations, or to otherwise take action to restore the victim's property."

(Emphasis added.) The State has the burden of proving the amount of restitution by a preponderance of the evidence. *State v. Gill*, 2004 ND 137, ¶ 7, 681 N.W.2d 832. Trial courts have a wide degree of discretion when determining restitution awards. *Tupa*, 2005 ND 25, ¶ 8, 691 N.W.2d 579. "Evidentiary imprecision on the amount of damages does not preclude recovery." *Keller v. Bolding*, 2004 ND 80, ¶ 21, 678 N.W.2d 578. When the quantity of damages awarded "may be hard to prove, the amount of damages is to be left to the sound discretion of the finder of facts." *B.W.S. Invs. v. Mid–Am Restaurants*, 459 N.W.2d 759, 764 (N.D.1990).

A

[¶ 9] Gendron argues the value of merchandise she returned should have been deducted from the restitution amount because the returned merchandise was in marketable condition. Evidence in the record bears out this contention, including the photographs of the returned merchandise. The photographs show many of the items in their original packaging with price tags attached. While merchandise that was unused but determined to be unmerchantable because it was no longer "in [the] system" was returned to Kohl's distribution center, no evidence indicated what ultimately happened to many of the items Gendron returned. Scott Miller, Kohl's loss-prevention manager, testified about what may have happened to this merchandise.

"Q: You said when they're damaged out where do they go?

"A: We send them out to the distribution center and take them off our system. They're out of our system already.

"Q: I mean, do you sell them to like other stores like Kohl's or—

"A: No. I'm not—

"Q: Not Kohl's, excuse me, like TJ Maxx, discount stores?

"A: I have no idea what happens to it once it leaves our store.

"Q: And you don't know—do you know how much Kohl's receives for those items? I mean, do you sell them?

"A: Well, we have to fill out a sheet where we put the price and then our price and we put zeros down, that's all I know. So we get nothing.

"Q: Okay. But, I mean, you send them to someplace else and you get nothing in return for them?

"A: Exactly.

"Q: You said a distribution center, is that associated with Kohl's?

"A: DC, yes.

"Q: And you don't know what happens to them after?

"A: I have no idea.

"Court: Okay. You don't know if they donate them or sell them? Do you?

"A: I don't know."

Based on this testimony, some of the items Gendron returned to Kohl's may have been sold and may have provided at least some minimal salvage value. While the court could have considered a salvage value, we cannot say the district court abused its discretion by not doing so. The valuation of shoplifted merchandise that has later been recovered can be difficult to precisely determine. It is not uncommon for merchandise to sell for less than the amount listed on the price tag, and it is impossible to determine with certainty what merchandise would have sold for had it not been stolen. It is impractical to expect shoplifting victims to track recovered merchandise to determine the ultimate sale price. Given the difficulties inherent in calculating such measures of damages, the determination is "left to the sound discretion of the finder of facts." *See B.W.S. Invs.*, 459 N.W.2d at 764. The value of merchandise Gendron returned to Kohl's was not completely excluded from consideration in the restitution award. Gendron was credited for $145 of saleable merchandise. The district court therefore did not act arbitrarily, unreasonably or unconscionably by failing to account for the value of merchandise returned but considered unmarketable by Kohl's.

## B

[¶ 10] Gendron also claims the restitution award reflects inaccuracies in Kohl's accounting of the stolen merchandise. Gendron correctly points out that the journal roll entry and receipt system contains approximate values for merchandise. For example, documentation from one transaction contains a note reading "approximately 5 items Passed [$]450.00." For this transaction, there is no indication of what type of merchandise was stolen or how the loss-prevention team determined its value. Nonetheless, we cannot conclude the district court acted arbitrarily, unreasonably or unconscionably by allowing the restitution amount to be based partially on approximate values.

[¶ 11] Gendron also questions the accuracy of Kohl's mathematical calculations. Gendron argues Kohl's requested recovery for the difference between the retail price and the discounted price for items she discounted without authorization. She claims Kohl's again requested recovery of the retail price of the exact same items and, thus, received double recovery. No evidence supports this argument.

## III

[¶ 12] Under the applicable standard of review the district court did not act arbitrarily, unreasonably or unconscionably. Therefore the district court did not abuse its discretion when determining the amount of restitution, and the district court's order is affirmed.

[¶ 13] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.