2015 ND 177

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Joan Leslie GATES, Defendant and Appellant.**

**Joan Leslie Gates, Petitioner and Appellant**

v.

**State of North Dakota, Respondent and Appellee.**

Nos. 20140317, 20150036.

Supreme Court of North Dakota.

July 1, 2015.

Marvin K. Madsen, State's Attorney, Mohall, N.D. for plaintiff, respondent, and appellee; submitted on brief.

Joan Gates, Sherwood, N.D., defendant, petitioner, and appellant; submitted on brief.

KAPSNER, Justice.

[¶ 1] Joan Gates appeals from a district court order requiring her to pay $93,257.74 in restitution to the personal representative of the Lela Gates Estate and from an order denying her application for post-conviction relief. We modify the restitution order and affirm as modified, and we affirm the order denying Gates' application for post-conviction relief.

I

[¶ 2] Gates was charged with misapplication of entrusted property for acts she allegedly committed while she was serving as the personal representative of the Estate of Lela Gates. A jury found Gates guilty. The district court entered a criminal judgment and ordered Gates to pay $23,537.72 in restitution. The district court informed the parties it was reserving the issue of additional restitution and a hearing would be held after an anticipated appeal was complete. Gates appealed, and this Court summarily affirmed the criminal judgment. *State v. Gates*, 2014 ND 99, 859 N.W.2d 929.

[¶ 3] A proposed order for restitution was filed, requesting the court order $368,459.66 in total restitution, including restitution for the proceeds from the sale

of stock, oil checks, and other amounts. After a hearing on the additional restitution, the district court sent the parties a letter advising them of its position on the restitution issues and indicating how it intended to decide on each item of requested restitution. The court requested the personal representative of the Estate of Lela Gates, Mark Westereng, review his research to ensure there were no duplications in the amounts requested. The court also advised the parties that they could submit additional documentation regarding the matters addressed in the letter. Gates filed an affidavit and attached documents in response to the court's letter. No other materials or responses were submitted. The court ordered Gates pay a total of $93,257.74 in restitution to the personal representative of the Lela Gates Estate.

[¶ 4] Gates applied for post-conviction relief. The State filed a response and requested the application be dismissed. The district court denied Gates' application.

## II

[¶ 5] Gates argues the evidence does not support the district court's findings about the amount of restitution ordered. She claims the oil checks and proceeds from the stock sales were deposited in the Estate's bank accounts and the money was used to pay monthly bills and liens against the Estate.

[¶ 6] The district court may order restitution as part of a criminal defendant's sentence after a hearing on the matter. N.D.C.C. § 12.1–32–08(1). Our review of a restitution order is limited to whether the district court acted within the prescribed limits of the statute, which is similar to the abuse of discretion standard. *State v. Bingaman*, 2002 ND 210, ¶ 4, 655 N.W.2d 57. A district court abuses its discretion when it acts in an arbitrary,

unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law. *State v. Kleppe*, 2011 ND 141, ¶ 28, 800 N.W.2d 311.

[¶ 7] "[District] courts have a wide degree of discretion when determining restitution awards." *State v. Gendron*, 2008 ND 70, ¶ 8, 747 N.W.2d 125. In ordering restitution, the court shall consider: (1) the reasonable damages sustained by the victims, (2) the ability of the defendant to pay monetary reparations, and (3) the likelihood that attaching a condition relating to restitution will serve a valid rehabilitation purpose. N.D.C.C. § 12.1–32–08(1). The State has the burden to prove the amount of restitution by a preponderance of the evidence. *Kleppe*, 2011 ND 141, ¶ 28, 800 N.W.2d 311. " 'Evidentiary imprecision on the amount of damages does not preclude recovery.' " *Gendron*, at ¶ 8 (quoting *Keller v. Bolding*, 2004 ND 80, ¶ 21, 678 N.W.2d 578). "When the quantity of damages awarded 'may be hard to prove, the amount of damages is to be left to the sound discretion of the finder of facts.' " *Gendron*, at ¶ 8 (quoting *B.W.S. Invs. v. Mid–Am Restaurants, Inc.*, 459 N.W.2d 759, 764 (N.D. 1990)).

[¶ 8] Gates was found guilty of misapplication of entrusted property, and the district court initially ordered her to pay $23,537.72 in restitution based on the evidence presented during the trial. However, the court reserved the issue of ordering additional restitution and after a hearing, ordered Gates pay $93,257.74 in total restitution. The court noted there were three categories of restitution items: (1) expenditures Gates made in her fiduciary capacity for purposes unrelated to the administration of the estate, (2) funds she received in her fiduciary capacity that were not deposited into estate accounts, and (3) expenditures others made resulting from and

addressing Gates' unlawful conduct. The court ordered Gates pay $37,757.72 in restitution for improper expenditures of estate funds, based upon testimony and an exhibit listing unknown or suspicious expenditures Westereng identified from the Estate's bank accounts. The court found Westereng's testimony about the expenditures was persuasive and established the expenditures were improper. The court ordered Gates pay $46,857.51 for misappropriated stock proceeds, finding Gates misappropriated $5,555.90 from the sale of Sempra stock and $41,301.61 from the sale of Pacific Gas & Electric stock. The court also ordered Gates pay $2,742.51 for misappropriated oil checks, $2,400.00 in legal fees, and $3,500.00 in personal representative fees.

[¶ 9] Gates argues the court erred in ordering she pay restitution for the oil checks. She claims the checks from the Crooks oil well were received and deposited in the Estate's bank accounts and the money was used to pay the Estate's monthly bills.

[¶ 10] Gates' brother testified that he was unable to determine what happened to the checks the Estate received for its interest in a Crooks oil well. He testified the company that distributes the checks for the oil well was contacted and he was able to determine multiple checks totaling $2,742.51 were issued for the Estate's interest in the well while Gates was the personal representative, but he was unable to determine what happened to those funds. Gates presented statements from the Estate's bank accounts showing a deposit for an amount that matched one of the Crooks oil checks; however, she did not present any evidence showing the deposit was an oil check or showing the remaining checks were deposited in the Estate's accounts. The district court did not abuse its discretion by ordering restitution for these amounts.

[¶ 11] Gates argues the court erred in ordering her to pay restitution for the proceeds from the stock sales. She claims there was evidence the funds from the sale of the stocks were deposited in the Estate's bank account, the funds were used to pay liens against the Estate, and the State did not present any evidence about how the funds were misappropriated.

[¶ 12] Westereng testified the stock proceeds were deposited in the Estate's bank account and over time the funds were used. A statement from one of the Estate's bank accounts showed a deposit of $5,555.90 was made on December 15, 2009, and a deposit of $41,301.61 was made on January 4, 2010. Copies of the deposit slips for both deposits and copies of the deposited checks were also in the record. At the end of the hearing, the district court said there was evidence the stock was sold and "we've got no evidence whatsoever that that went into the Estate. So there would be $46,857.51, that is unaccounted for by the person who was the fiduciary at the time those funds were realized by the Estate and that would be a legitimate item for restitution." The court found the stock proceeds were legitimate items for restitution because they were funds Gates received in her fiduciary capacity that were not deposited into the Estate's accounts. There was undisputed evidence the stock proceeds were deposited in the Estate's bank accounts. There is no evidence supporting the court's decision to order Gates pay restitution for these amounts.

[¶ 13] Gates argues the court erred in ordering her to pay $37,757.72 restitution for improper expenditures of estate funds. At the restitution hearing, Westereng testified about the improper

expenditures and other evidence was presented supporting his testimony, including an exhibit listing each of the alleged improper expenditures. Westereng testified that he reviewed the transactions for two of the Estate's bank accounts and created the list of improper expenditures, including transactions that were unknown or suspicious in nature and that were unclear how they benefitted the Estate. Most of the alleged improper expenditures were for ATM withdrawals from the Estate's checking account or withdrawals from the Estate's savings account, but there were also amounts for check and debit card purchases, including a check for $7,250 made out to Dakota Weed Spraying. Westereng testified the check to Dakota Weed Spraying was never cashed, he was unable to find the weed spraying company, and the funds never left the Estate's bank account. Westereng testified the amount was included in the accounting of the Estate for the period that Gates was personal representative but he did not understand why it was included. He testified he did not believe there would be any restitution for that amount because the check was never cashed and the funds remained in the Estate's bank account. At the end of the restitution hearing, the court indicated it would not order restitution for the weed spraying because it was a fictitious event. However, the court included the amount in the restitution ordered for improper expenditures. There is no evidence supporting the court's decision to order Gates pay restitution for the weed spraying check, and the court abused its discretion in ordering restitution for this amount. The court did not abuse its discretion in ordering Gates pay restitution for the other improper expenditures.

[¶ 14] Gates argues the court erred by ordering her to pay the same restitution twice. She claims she was ordered to pay $23,537.72 in the initial criminal judgment and this amount was ordered a second time as part of the restitution for improper expenditures of estate funds in the restitution order. She claims she is required to pay $116,794.74 in total restitution.

[¶ 15] The restitution order listed the restitution amounts the court found Gates must pay for the improper expenditures of estate funds, misappropriated stock proceeds, misappropriated oil checks, legal fees, and personal representative fees, and calculated a total amount. The order states, "The Criminal Judgment previously entered in this matter shall be amended to provide for restitution to be paid by Ms. Gates to the personal representative of the Lela Gates Estate in the total amount of $93,257.74." The amended restitution for the improper expenditures of estate funds included the restitution previously ordered in the original criminal judgment, and did not order it in addition to the previously ordered amount. Gates was not ordered to pay the same restitution twice.

[¶ 16] The judgment reflects an error in the amount of restitution ordered. The record shows the stock proceeds of $46,857.51 were deposited in the Estate's bank account and were used by the Estate over time. The record also shows the check for $7,250 allegedly paid to a weed spraying business was never cashed and the funds remained in the Estate's bank account. These amounts should not be included in the ordered restitution. We direct the restitution order be amended to reflect these amounts and order Gates to pay $39,150.23 in total restitution.

### III

[¶ 17] We have considered any remaining issues and arguments raised, and we conclude they are either without merit or are unnecessary to our decision. We affirm the district court's restitution order

as amended to reflect the correct amounts of restitution, and we also affirm the order denying Gates' application for post-conviction relief.

[¶ 18] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ.