**Michael John PRATT, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**Robert Gordon WEST, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Sept. 12, 1983.

Decided: Dec. 15, 1983.

Revised: March 15, 1984.

Reargument Denied March 15, 1984.

Ronald D. Smith, Hudson, Jones & Jaywork, Dover, for appellants.

Gary A. Myers, Deputy Atty. Gen., Georgetown, for appellee.

Before HERRMANN, C.J., HORSEY and MOORE, JJ.

MOORE, Justice:

### I.

This appeal by Robert Gordon West and Michael John Pratt from a Superior Court order requiring payment of restitution to the victims of their crimes presents several issues of first impression: the scope of the term "victim"; the manner and preparation of loss statements; the method of valuing property damaged by a defendant's criminal act; and the scope of due process protections to which a defendant is entitled when a sentence of restitution is imposed. The defendants raise several challenges to the order of restitution, including alleged due process and statutory violations by the trial court in determining the amount of restitution and the terms thereof. We reject these assertions and affirm. However, in doing so we also have established guidelines for the trial court's future adherence in restitution cases.

## II.

The facts are not in dispute. On November 19, 1981, Pratt and West were arrested and charged with two counts of burglary and two counts of arson in connection with the destruction of two resort cottages near Dover, Delaware. On March 10, 1982, the defendants signed plea agreements, each pleading guilty to one count of third degree burglary and one count of first degree criminal trespass in return for a *nolle prosequi* on the arson counts.[1] In their respective plea agreements Pratt and West also agreed to make restitution for the losses caused by their criminal acts.

Between execution of the plea agreements and sentencing, the Kent County Presentence Office of the Superior Court obtained loss statements from persons who suffered property damage caused by the defendants. Loss statements were submitted by the owners of the two destroyed cottages and owners of adjacent properties. Their insurers also filed claims. This information was given to the trial judge. On May 14, 1982, the defendants appeared for sentencing. At that hearing, Pratt and West challenged the lack of information substantiating the loss statements and the State's failure to establish that the various restitution claimants had actually been injured. However, defendants presented no

evidence, made no investigation, and did not subpoena any of the claimants.[2] The Superior Court then sentenced each defendant to ten years imprisonment on the burglary count, five years of which were suspended for five years probation. As a condition of this probation, each defendant was to pay restitution totaling $22,955.48. On the criminal trespass count the Superior Court sentenced each defendant to two more years of probation.

However, the trial judge scheduled a second hearing on restitution, given the defendants' objections to the factual bases upon which the order was entered. Prior to this later hearing, the Presentence Office compiled additional information on the ownership of the adjacent property and of the damages thereto. The information ultimately compiled also included the loss claims which the owners of the two burned cottages and the adjacent property owners had filed with their insurers. However, there is no information indicating any investigation by the insurers as to the value of the losses claimed. The second restitution hearing was held on June 10, 1982. Again, Pratt and West did not offer any evidence or take any other affirmative steps to contradict the information compiled by the Presentence Office. Rather,

1. 11 *Del.C.* § 824 defines the offense of third degree burglary as follows:

    A person is guilty of burglary in the third degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein.
    Burglary in the third degree is a class D felony.
    11 *Del.C.* § 824 (1979).
    11 *Del.C.* § 823 defines first degree criminal trespass as follows:

    A person is guilty of criminal trespass in the first degree when he knowingly enters or remains unlawfully in a dwelling.
    Criminal trespass in the first degree is a class A misdemeanor.
    Id. § 823.
    11 *Del.C.* § 802 defines second degree arson as follows:

    (a) A person is guilty of arson in the second degree when he intentionally damages a building by starting a fire or causing an explosion.

    (b) In any prosecution under this section it is an affirmative defense that:
    (1) No person other than the accused had a possessory or proprietary interest in the building, or if other persons had such interests, all of them consented to the accused's conduct; and
    (2) The accused's sole intent was to destroy or damage the building for a lawful purpose; and
    (3) The accused had no reasonable ground to believe that his conduct might endanger the life or safety of another person or damage another building.
    Arson in the second degree is a class C felony.
    Id. § 802.

2. At oral argument, counsel for West justified his failure to take any affirmative action by stating only that at sentencing, he believed the burden of proof as to the identity of the victims and their loss rested entirely on the State.

the defendants argued only that the figures were inconsistent, that losses were calculated on replacement value, and that neither the adjacent property owners nor any insurer qualified for restitution as "victims". The Superior Court then revised the restitution orders by reducing the total debt of each defendant to $22,465.49, but increasing the number of payees to whom it was owed.

### III.

On appeal Pratt and West make three arguments. First, they contend that while the Delaware criminal restitution statute provides for monetary liability to the victim of a property offense, only those who suffer a loss as a direct result of the defendant's conduct qualify for restitution. See 11 *Del.C.* § 4106 (Supp.1982). Thus, defendants contend that this class of directly-injured persons is limited to those victims listed in the indictment. Given this contention, appellants conclude that the claims of insurers and adjacent property owners are not cognizable for purposes of restitution.

Defendants' second argument goes to the procedure for determining the amount of restitution. In particular, they contend that the State did not meet its burden of establishing the market value of the damaged property, reading 11 *Del.C.* § 224(1) (1979) into 11 *Del.C.* § 4106(a) (Supp.1982). The defendants also contend that use of the hearsay loss statements to establish the restitution amount without the right to confront the victims who submitted the loss statements, denied them procedural due process. The appellants also point to a lack of compliance with section 4106(a) in that the victims, rather than the police, prepared the loss statements. This was an alleged denial of defendants' due process and equal protection rights.

Appellants' third and final argument is that the Superior Court abused its discretion in failing to consider their ability to pay the restitution ordered. In particular, they assert that restitution is meant to rehabilitate the criminal in addition to com-

pensating the victim. Appellants note that the aim of rehabilitation will not be met where the defendant can not possibly pay the restitution. They observe the improbability that either will be able to meet this obligation. At sentencing, Pratt was nineteen years old. He had no prior criminal record. He had no high school education. He will be dishonorably discharged from the United States Air Force, his only source of job training. After serving a five year prison term, he will emerge a convicted felon. Similarly, West was a nineteen year old without a criminal record. While he had a high school education, he too will be dishonorably discharged from the Air Force, his chosen career. He also will serve five years in prison and enter the job market as a convicted felon. Given these circumstances and the rehabilitative purpose behind restitution, counsel for the defendants argue that the Superior Court should have considered the appellants' ability to meet these obligations in view of the draconian nature of the sentences imposed.

The State responds that section 4106 requires a broad interpretation of the term "victim", that the Superior Court validly and properly followed section 4106 in calculating the amount of restitution, and that the Superior Court was not required to consider the appellants' ability to pay in ordering restitution. Regarding the validity and propriety of the calculation of restitution in this case, the State contends that restitution hearings do not require all of the procedural safeguards guaranteed by due process. The State also observes that appellants had two hearings in which to challenge the underlying factual bases supporting the restitution awards. The State also contends that the Presentence Office, rather than the police, could validly compile and present loss information, despite the language of section 4106(a), because section 4106(a) was meant only to place the burden on the police to supervise the compilation of such information. The State contends further that market value is not the exclusive method for determining val-

ue, and that the trial courts, in determining loss for restitution orders, should use civil court standards. Finally, as to the failure to consider the appellants' ability to pay upon completion of their prison terms, the State argues that such a speculative inquiry is not required by statute, and that the amount of loss should be the sole criterion. The State reasons that if the offender is unable to pay the restitution ordered, he could work in the work referral program until his financial condition improved. In that event, the court could modify the terms and timing of his payments without increasing the total sentence.

## IV.

We focus on the statutes in question. 11 *Del.C.* § 4106(a) provides in pertinent part:

Any person convicted of stealing, taking, receiving, converting, defacing or destroying property, shall be liable to each victim of his offense for the value of the property or property rights lost to the victim and for the value of any property which has diminished in worth as a result of the actions of such convicted offender and shall be ordered by the court to make restitution.... The convicted offender shall also be liable for direct out-of-pocket losses, loss of earnings and other expenses and inconveniences incurred by victim as a direct result of the crime. For each criminal offense resulting in arrest in which property is alleged to have been unlawfully taken, damaged or otherwise diminished in value, a loss statement shall be prepared, by the police or by the victim when there is no police involvement, documenting for the court the value of the property lost or diminished as a direct result of the crime.

11 *Del.C.* § 4106(a) (Supp.1982). Section 4106(b) provides:

In accordance with the evidence presented to the court, the court shall determine the nature and amount of restitution, if any, to be made to each victim of the crime of each convicted offender.

The offender shall be ordered to pay a fixed sum of restitution or shall be ordered to work a fixed number of hours under the work referral program administered by the Department of Correction, or both.

*Id.* § 4106(b). In June 1981, the Ad Hoc Committee on Restitution, which drafted the foregoing statute, submitted a report along with its draft. The State submitted this report as part of its appendix in this action. In the report, the Committee stated that the purpose of the statute was "to make offenders liable for restitution for property which has been lost or severely damaged as a result of their crime". Report of the Ad Hoc Committee on Restitution, at 11 (June 1981). The Committee commented that:

Restitution, therefore is seen as a just and viable alternative for offenders which would be frequently applied.... It is the consensus of the Committee that the victim has been too long ignored in the criminal justice system and that too many offenders have avoided accountability for the loss or damage they have caused.

*Id.* at 2–4.

In addition, the Committee set forth guidelines for the amount of restitution ordered, including a provision that losses covered by insurance are second in priority to a victim's out-of-pocket expenses. *Id.* at 14. The Committee report then stated that "[t]he above limitations, while still onerous in some instances, would at least keep the end of punishments in sight for the defendant. Where imposition of restitution and fine is excessive, retain restitution at the expense of the fine". *Id.* The Committee also recommended limiting restitution where "the defendant's ability to pay is in question". *Id.* This legislative concern with the ability of a defendant to meet restitution obligations is reflected in the requirement of 4106(b) that an "offender shall be ordered to pay a *fixed* sum of restitution or shall be ordered to work a

*fixed* number of hours ..." 11 *Del.C.* § 4106(b) (emphasis added).

█ In determining the nature and amount of restitution under subsection 4106(b), the sentencing judge must first ascertain the value of the property damaged or destroyed by the criminal acts of the defendant. Once the value is calculated, the judge may then set the terms of the restitution order. The General Assembly has mandated that this valuation is governed by 11 *Del.C.* § 224, which states in pertinent part:

Whenever the value of property is determinative of the degree of an accused's criminal guilt or otherwise relevant in a criminal prosecution, it shall be ascertained as follows:

(1) Except as otherwise specified in this section, value means the *market value* of the property at the time and place of the crime, or if that cannot be satisfactorily ascertained, the cost of replacing the property within a reasonable time after the crime.

(2) Whether or not they have been issued or delivered, the value of certain written instruments ... shall be ascertained as follows:

a. The value of an instrument constituting an evidence of debt ... shall be deemed the amount due ...

b. The value of any other instrument which ... affects any valuable legal right ... shall be deemed the greatest amount of economic loss which the owner of the instrument might reasonably suffer ...

(3) When the value of property cannot satisfactorily be ascertained pursuant to ... subdivisions (1) and (2) of this section, its value shall be deemed to be an amount less than $100.

11 *Del.C.* § 224 (1979). (Emphasis added). Section 224, therefore, provides that market value is the principal, but not exclusive, standard for valuing property for restitution purposes. There are, however, significant exceptions and limitation to the use of that standard. Given the applicability of section 224 to restitution proceedings, this Court has no authority to contravene section 224 by permitting the unbridled use of civil court valuation standards. Any amendment must come from the legislature.

To calculate the value of the property in a restitution case, a sentencing judge is aided by the use of victim loss statements, mandated by subsection 4106(a) of the restitution statute. This law requires that loss statements be prepared by the police or by the victim when there is no police involvement. 11 *Del.C.* § 4106(a) (Supp. 1982). Although the Ad Hoc Committee did not define the term "police" as used in subsection 4106, the Committee's report clearly contemplated that other law enforcement personnel have a role in the preparation of loss statements. Report of the Ad Hoc Committee on Restitution, *supra*, at 12–13. Presentence officers, appointed by the Superior Court pursuant to the authority delegated to it in 11 *Del.C.* § 4335(a), are well-qualified to prepare loss statements in restitution cases, since their role is to conduct investigations under the direction of that court. See 11 *Del.C.* § 4335(a) (1979). These inquiries include the motivation of the defendant, his past criminal record, his social and family history, his behavior pattern, and his present condition, e.g., age, health, intelligence, education, job skills and training, etc. 11 *Del.C.* § 4335(d) (1979). Each presentence officer carries a badge identifying him as an officer of the Superior Court. *Id.* § 4335(b). Given these qualifications, we interpret subsection 4106(a) to allow preparation of loss statements by presentence officers.

█ Use of loss statements within the above-described statutory scheme does not offend the Due Process Clause. *See Roberts v. United States,* 445 U.S. 552, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980); *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 2615, 57 L.Ed.2d 582 (1978); *Williams v. New York,* 337 U.S. 241, 69

S.Ct. 1079, 1081–84, 93 L.Ed. 1337 (1949). In *Williams v. New York,* the United States Supreme Court upheld a death sentence imposed by the trial judge based on additional information provided by a state presentence office. *Williams,* 69 S.Ct. at 1085. The Court in *Williams* noted the distinction between evidentiary rules at trial and sentencing, explaining that at trial evidentiary rules are meant to confine the contest to relevant evidence and to avoid trial of collateral issues. The Court noted that in contrast a wealth of information, albeit collateral, is sought at sentencing so that an appropriate punishment can be imposed. *Id.* at 1084. The Court recognized that historical practices and modern penology supported the trial-sentencing distinction, concluding that "the due process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due process clause would burden if not preclude all courts—state and federal—from making progressive efforts to improve the administration of criminal justice". *Id.* at 1085.[3] *See Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 1211, 18 L.Ed.2d 326 (1967) (recognizing *Williams* as valid but declining to allow conviction as basis for sentence on second conviction); *Williams v. State,* 358 U.S. 576, 79 S.Ct. 421, 426, 3 L.Ed.2d 516 (1959) (allowing use

of Oklahoma prosecutor's description of murder incident to kidnapping trial and prosecutor reference to defendant's criminal record). Given the continuing validity of *Williams* and its progeny in noncapital cases, loss statements may validly be used at sentencing to determine the nature and amount of restitution.

▪ Apart from the loss statements, a sentencing judge may consider other evidence presented at the restitution hearing under subsection 4106(b). Presently, there is no statutory requirement that a defendant's ability to pay be considered in determining the nature and amount of restitution. *See* 11 *Del.C.* § 4106 (Supp.1982). Under the present statutory scheme, any inability to meet the restitution obligation once restitution has been ordered can be cured by ordering the criminal to work for the Department of Corrections as a substitute for restitution payments. *See* 11 *Del.C.* § 4105 (Supp.1982). Furthermore, a court has the inherent power to readjust the defendant's payment schedule at any time.

▪ Having examined the statutory scheme, we read the plain meaning of the term "victim" in Section 4106 to be one who suffers injury, loss, or death as a result of the voluntary act or undertaking of another.[4] *See* American Heritage Dic-

---

**3.** The *Williams* trial-sentencing due process distinction has been limited by later decisions of the United States Supreme Court only in the context of capital cases. In *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 1203, 51 L.Ed.2d 393 (1977), a homicide defendant was sentenced to death despite an advisory jury verdict of life imprisonment. *Id.* at 1202. The sentencing judge based his ruling on a presentence report finding an aggravating circumstance; the report was never entirely disclosed to defense counsel. *Id.* at 1203. After reaffirming the *Williams* distinction, the Court in *Gardner* by noting that the presentence report there was entirely disclosed to the defendant, who did not challenge it. *Id.* The Court in *Gardner* stated that in contrast to noncapital sentencing, capital sentencing now warranted closer scrutiny because at least five Justices recognized that death is a uniquely different kind of punishment and because of the then newly-clarified rule that the sentencing process

must comport with the requirements of the Due Process Clause. *Id.* at 1204.

**4.** In construing the statutory term "victim", we recognize that some jurisdictions do not allow insurers of crime victims or third parties to receive restitution from the criminal. *See, e.g., State v. Getsinger,* 27 Or.App. 339, 341–42, 556 P.2d 147, 148 (1976) (held statutory term "aggrieved party" did not include insurer of victim's damaged automobile). But see Or.Rev. Stat. § 137.103(4) (1981) (revision of statute construed in *Getsinger* to allow restitution for any person who has suffered pecuniary damages as a result of the defendant's criminal activities). However, we determine to adopt the better rule of law and hence, conclude that insurers who make compensation to policyholding victims are eligible for restitution under section 4106. *See* Iowa Code Ann. § 907.-12(1)(a) (West 1979); Miss.Code Ann. § 99–37–1(d) (Supp.1981); N.M.Stat.Ann. § 31–17–

tionary, at 1428 (1st ed. 1969). This construction of the term is entirely consistent with 1 *Del.C.* § 303 (1974), which requires that words be read with their context and construed according to the common and approved usage of the English language. 1 *Del.C.* § 303 (1974). Given this broad construction, we view the sentencing judge's consideration of loss statements prepared by the property owners, including the adjacent ones, to be entirely proper.

■ As for the procedure employed in determining restitution, we conclude that the use of loss statements under section 4106 does not offend the Due Process Clause. ⁻ We conclude further that the Presentence Office, as well as the police or the victim, when there is no police involvement, may validly compile and complete loss statements in restitution cases. As to the claims of the appellants that the trial court violated 11 *Del.C.* § 224 by not ascertaining market value as the basis of restitution, the record reveals that the trial judge did consider the market value of the damaged and destroyed property. As for the failure to consider the appellants' inability to pay, the appellants can not point to any statutory provision requiring consideration of that factor. Finally, with respect to all of appellants' challenges to the amount of restitution ordered, we note that appellants were given two opportunities to present evidence bearing on such issues. At the first hearing, they did nothing other than object to the amount of restitution and the determination thereof. At the second hearing, granted at appellants' request, they again did nothing. They presented no evidence, made no investigation, and did not subpoena any claimant. Based on the legal principles we have discussed, we conclude that the sentencing judge did not abuse his discretion in determining and ordering the amount of restitution.

■ Notwithstanding the foregoing, we exercise our constitutional authority under Del. Const. art. IV, § 13(1) and our legisla-

tively-created power under 11 *Del.C.* § 4106(d) to direct the Superior Court and the other courts of criminal jurisdiction to promulgate procedural rules to implement section 4106. To assist the courts in their rulemaking task, we provide the following guidelines for their adherence:

(1) Victim loss statements used by the police and/or the Presentence Office must be 'changed to ask for market value, as opposed to replacement value or replacement cost.

(2) Whenever possible, victim loss statements should be completed by the victim, who must include a receipt or other verification of the loss statement.

(3) A letter informing the victim of the right to seek restitution must accompany the loss statement.

(4) Restitution is discretionary and its imposition shall be governed by 11 *Del.C.* § 4106(a).

(5) Restitution should be ordered when the victim has suffered an actual monetary loss through personal injury, damage to or destruction or theft of property.

(6) Restitution should cover the victim's own out-of-pocket expenses and losses as a first priority; losses covered by insurance are the lowest priority.

(7) The defendant's ability to pay is an element to be considered in determining the amount of restitution and the schedule of payments.

These guidelines were taken from the Report of the Ad Hoc Committee on Restitution, which drafted section 4106. This report was submitted by the State to this Court in the appendix to the State's appellant brief.

We cannot close without some final observations to the trial judge here. This Court does not decide cases in a vacuum. We note that both defendants in this action are nineteen years old. Neither has any marketable job skill nor any prospect for

1(A)(1) (1981); S.D.Codified Laws Ann. § 23A– 28–2(1) (1979 and Supp.1982).

future training. Both are convicted felons, will serve five years in prison, and must make substantial restitution thereafter. Finally, both defendants were transient servicemen stationed in Delaware who committed a serious offense. We are cognizant of the tensions that sometimes arise between segments of the local population and members of our Armed Forces stationed in this State. Given the obvious severity of the defendants' sentences and the prospect that they will be unable to pay the restitution ordered—primarily to insurers, it appears that the court may have been more intent upon making examples of these defendants rather than giving application of the law the care and attention it requires. While we have sustained the trial court's exercise of discretion here, we also believe that it reached its outer limits, and trust that a cautionary word on the subject will suffice. For the reasons stated above, however, the restitution order is affirmed.

\*      \*      \*

AFFIRMED.