# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 1712012254 |
| | ) | |
| | ) | |
| KELLIE A. PULGINI, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: September 9, 2019
Decided: April 30, 2020

## COMMISSIONER'S REPORT AND RECOMMENDATION
## REGARDING RESTITUTION

Joseph E. Gibbs-Tabler, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Patrick J. Collins, Esquire, Collins & Associates, Attorney for Defendant Kellie A. Pulgini.

SALOMONE, Commissioner

This 30th day of April, 2020, it appears to the Court as follows:

## FACTS AND PROCEDURAL HISTORY

Defendant Kellie A. Pulgini ("Defendant") was arrested on December 21, 2017 and charged with three counts of Theft Greater Than $100,000 (Class B Felony) and one count of Theft Greater Than $1,500. Defendant was released the following day after posting $202,000 secured bail.

These charges were brought following an interview held on October 16, 2017 between the New Castle County Police Department and Michael Flanagan and Norma Flanagan, the brother and mother of the Defendant (together, the "Flanagans"). The Flanagans reported that Defendant had taken money from multiple business and personal accounts held by the Flanagans. Prior to the interview, the Defendant confessed to "borrowing money" from the Flanagans as well as the businesses and stated that she could no longer stand the guilt.[1] Defendant then checked herself into the psychiatric ward at Wilmington Hospital for depression and suicidal thoughts.

An investigation was initiated into the theft and a forensic accountant from the Delaware Department of Justice analyzed all financial records and determined that the thefts occurred between July 21, 2012 and December 21,

---

[1] Defendant had been the office manager of Michael Flanigan's businesses since the companies' inception.

1

2017 and included the Flanagans, the Irrevocable Life Insurance Trust of Michael A. Flanagan Sr., Wealth Guardians Inc., and Business Prosperity LLC. The total amount of the theft was $444,193.00[2] and was comprised as follows:

(i)  Norma Flanagan - $119,662.00

(ii)  Irrevocable Life Insurance Trust of Michael A. Flanagan, Sr. - $120,718.00

(iii)  Wealth Guardians, Inc. - $170,800.00

(iv)  Business Prosperity LLC - $33,013.00

On January 7, 2019, Defendant pleaded guilty to one count of Theft Greater Than $100,000 (Class B Felony) and two counts of Theft Greater Than $50,000 (Class D Felonies). The remaining charge was *nolle prossed.* On April 26, 2019, this Court sentenced Defendant as follows: for the Class B Felony, twenty-five (25) years at Level 5, suspended after two (2) years at Level 5 for one (1) year at Level 3; for the first Class D Felony, eight (8) years at Level 5, suspended immediately for one (1) year at Level 3; and for the second Class D Felony, two (2) years at Level 5, suspended immediately for one (1) year at Level 3. All Level 5 time was ordered to run consecutive and all probation was ordered to run concurrently.

---

[2] It is the understanding of the Court that the Defendant took the money to support her and her families' extravagant lifestyle.

Prior to her incarceration and while Defendant was hospitalized in Christiana Care's psychiatric ward, the Flanagans and Wealth Guardians entered into a settlement agreement, dated October 2, 2017 (the "Settlement Agreement") with Defendant. The Settlement Agreement provides that the Flanagans and Wealth Guardians[3] shall waive and forever discharge any civil claims that they have or may have with regards to the "Misappropriated Funds"[4] in exchange for Defendant disclaiming any and all interest in the home she owned with her mother.[5]

Notwithstanding the foregoing, the State requests criminal restitution above and beyond the Settlement Agreement. At issue before the Court is whether the Settlement Agreement precludes the State from seeking additional restitution from Defendant for the benefit of the Flanagans and Wealth Guardians.

On July 22, 2019, the Superior Court entered an Order of Reference for the determination of three specific issues:

I. Whether, pursuant to 11 Del. C. Sections 841(d) and/or 4106(d), the Court must enter a restitution order in this case.

---

[3] Neither the Irrevocable Life Insurance Trust of Michael A. Flanagan, Sr. nor Business Prosperity LLC were a party to the Settlement Agreement.

[4] The Settlement Agreement defines the Misappropriated Funds as $500,000.00.

[5] The home that Defendant owned with her mother sold for $775,000.00, thereby leaving no question regarding the fair market value of the property.

II. If not mandatory, should the Court exercise its sentencing discretion to enter a restitution order in this case?

III. If the Court should enter a restitution order, what is the proper restitution amount under the circumstances in this case?

In a letter dated August 30, 2019, the Commissioner requested that the parties provide the Court with a detailed explanation of the amount requested and the calculation of such amount by September 4, 2019. That same day, the State advised the Court by email that the amount requested was $94,118.72 and described the manner by which the State arrived at that figure as follows:

> Norma Flanagan is owed $0.00 in restitution. The Defendant stole $119,662.00 from her. Additional costs that should be added to that theft are $1,500.00 in attorney fees for work done obtaining a civil settlement in this matter and $5,450.00 in attorney fees for legal advice with respect to figuring out how to obtain a mortgage for a new home that the victim had to move into as a result of the theft, amending trusts that listed the Defendant as a trustee, and amending estate planning documents. From the $126,612.00, $356,694.28 was subtracted (one half of the sale price of the home ($775,000.00) minus settlement costs the victim had to pay in order to convert this asset to money (61,611.45)). $230,082.28 of the home value remained unapplied after calculating Norma Flanagan's restitution.

> The Defendant owes the Michael Flanagan Sr. Irrevocable Life Insurance Trust $0.00 in restitution. Defendant stole $120,718.00 from this entity. The $230,082.28 in remaining home value was subtracted from the $120,718.00 leaving $0.00 in restitution and $109,364.28 in unapplied home value.

4

The Defendant owes Michael Flanagan Jr.'s businesses $94,118.72 in restitution. The Defendant stole $203,813.00 from Business Prosperity and Wealth Guardians. $11,320.00 in legal fees for amending and filing amendments to tax returns impacted by the Defendant's theft should be added to the total theft amount of $203,813.00 resulting in a total of $215,133.00. An additional $13,350.00 should be added to $215,133.00 for a loan that Michael Flanagan had to take out in order to pay bills that were created and left unpaid as a result of the theft. This leaves a total of $228,483.00. $25,000.00 that Wealth Guardians received as a result of a Travelers Insurance Policy and the remaining $109,364.28 in home value were then subtracted. This leaves $94,118.72.[6]

At the hearing held on September 6, 2019, the State and Defendant's counsel jointly submitted a stipulation to the Court stating that the total amount owed to the victims in this matter, after appropriate reductions for amounts previously tendered under the Settlement Agreement, should not exceed $93,118.72.

On September 9, 2019, after having jointly stipulated to a total amount of restitution with Defendant's counsel, the State sent a letter to the Court and admitted that the State had erred in the calculation of the previous restitution amount and requested instead a total of $183,118.72. According to the State, the Defendant stole $210,718.00 from the Irrevocable Life Insurance Trust of Michael A. Flanagan, Sr. instead of the $120,718.00

---

[6] D.I. 29 (State's August 30, 2019 Letter that informed the Court of the initially asserted restitution amount and an explanation as to the manner in which the amount was calculated.).

5

represented in the stipulation. The State asserted, in the September 9, 2019 letter, in pertinent part, that

> The Defendant owes the Irrevocable Life Insurance Trust of Michael A. Flanagan Senior $0.00 in restitution. The Defendant stole $210,718.00 from this entity. The $230,082.28 in remaining home value should be subtracted from the $210,718.00 leaving $0.00 in restitution and $19,364.28 in unapplied home value.
>
> The Defendant owes Michael Flanagan Junior's businesses $183,118.72 in restitution. The defendant stole $203,813.00 from Business Prosperity and Wealth Guardians. $10,320.00 in legal fees for amending and filing amendments to tax returns impacted by the Defendant's theft should be added to the total theft amount of $203,813.00 resulting in a total of [$]214,133.00. An addition $13,350.00 should be added to $214,133.00 for a loan that Michael Flanagan had to take out in order to pay bills that were created and left unpaid as a result of the theft. This leaves a total of $227,483.00. $25,000 that Wealth Guardians received as a result of a Travelers Insurance Policy and the remaining $19,364.28 in home value should then be subtracted. This leaves $183,118.72.[7]

Defendant's counsel, as noted by the State in the September 9 letter, "oppose[d] any changes to the maximum restitution amount. The amount agreed to and submitted as a stipulation at the hearing should be controlling. Defendant counsel maintains no additional restitution should be ordered, for reasons stated on the record."[8]

---

[7] D.I. 32 (State's September 9, 2019 Letter that informed the Court that the State erred in calculating restitution and requested an additional amount).

[8] *Id.*

## ANALYSIS

Each of the Court's questions are addressed below.

### I. Whether, pursuant to 11 Del. C. Sections 841(d) and/or 4106(d), the Court must enter a restitution order in this case.

A review of the relevant statutory sections and applicable case law clarifies that "the trial judge *must* consider restitution as part of sentencing."[9]

11 *Del. C.* Section 4204 provides, in pertinent part, as follows:

> Whenever a victim of a crime suffers monetary loss as a result of the defendant's criminal conduct, the sentencing court shall impose as a special condition of the sentence that the defendant make payment of restitution to the victim in such amount as to make the victim whole, insofar as possible, for the loss sustained.[10]

11 *Del. C.* Section 4106 "expanded the use of restitution to cases where individuals are convicted of 'stealing, taking, receiving, converting, defacing, or destroying property.'"[11] Section 4016 provides, in pertinent part, as follows:

> (a) Any person convicted of stealing, taking, receiving, converting, defacing or destroying property, shall be liable to each victim of the offense for the value of the property or property rights lost to the victim and for the value of any property which has diminished in worth as a result of the actions of such convicted offender and shall be ordered by the court to make restitution. *If the court does not require that*

---

[9] *Gann v. State*, 31 A.3d 75 (Del. 2011) (emphasis in original).

[10] 11 *Del. C.* § 4204.

[11] *State v. Elsey*, 2012 WL 1413487, at *1 (Del. Super. Ct. Jan. 20, 2018)

7

***restitution be paid to a victim, the court shall state its reason on the record.*** The convicted offender shall also be liable for direct out-of-pocket losses, loss of earnings and other expenses and inconveniences incurred by victim as a direct result of the crime. For each criminal offense resulting in arrest in which property is alleged to have been unlawfully taken, damaged or otherwise diminished in value, a loss statement shall be prepared, by the police or by the victim when there is no police involvement, documenting for the court the value of the property lost or diminished as a direct result of the crime.

(b) In accordance with the evidence presented to the court, the court shall determine the nature and amount of restitution, ***if any***, to be made to each victim of the crime of each convicted offender. The offender shall be ordered to pay a fixed sum of restitution or shall be ordered to work a fixed number of hours under the work referral program administered by the Department of Correction, or both.

*******

(e) An order of restitution may not preclude the victim from proceeding in a civil action to recover damages from the offender. A civil verdict shall be reduced by the amount of restitution paid under the criminal restitution order.[12]

As the highlighted language indicates, Section 4106 provides the Court with discretion in awarding restitution to victims of theft. In *Pratt v. State*,[13] the Delaware Supreme Court confirms such discretion and provides the following guidelines:

[...]

---

[12] 11 *Del. C.* § 4106 (emphasis added).

[13] *Pratt v. State*, 486 A.2d 1154 (Del. 1983).

(4) Restitution is discretionary and its imposition shall be governed by 11 *Del. C.* Section 4106(a).

(5) Restitution should be ordered when the victim has suffered an actual monetary loss through personal injury, damage to or destruction or theft of property.

(6) Restitution should cover the victim's own out-of-pocket expenses and losses as a first priority; losses covered by insurance are the lowest priority.

(7) The defendant's ability to pay is an element to be considered in determining the amount of restitution and the schedule of payments.[14]

Were only § 4106 at issue, it would be clear that this Court may use its discretion with respect to ordering restitution. However, on July 8, 1994, the Delaware Legislature approved an amendment to 11 Del. C. § 841 which muddied the waters somewhat. As amended, § 841(d) provides as follows:

Upon conviction, the sentencing judge ***shall require full restitution*** to the victim for any monetary losses suffered and shall consider the imposition of community service and/or an appropriate curfew for a minor.[15]

Therefore, although restitution is discretionary under § 4016, Section 841(d) could be interpreted to limit that discretion. In the synopsis to the amendment, the Delaware legislature states its intent[16] as "requir[ing] a

---

[14] *Id.* at 1161. In *Pratt v. State,* the Delaware Supreme Court noted that there is no statutory requirement that a defendant's ability to pay be considered in determining the nature and amount of restitution. *Id.* at 1160 (citation omitted).

[15] 11 *Del. C.* § 841(d) (emphasis added).

[16] *Carper v. New Castle County,* 432 A.2d 1202 (Del. 1981) (synopsis of Bill is "a proper source from which to glean legislative intent.").

sentencing judge to order full restitution of losses to a victim of theft [...]."[17]

Despite the foregoing mandatory language, Delaware cases decided subsequent to the amendment to 11 Del. C. § 841 nevertheless support the notion of judicial discretion in such matters.[18] Therefore, while this Court must consider restitution as part of sentencing, it is not mandatory that the Court enter an order for restitution in every case.[19]

## II. If not mandatory, should the Court exercise its sentencing discretion to enter a restitution order in this case?

As previously noted, under § 4106(b) as well as *Pratt* and its progeny, this Court has discretion with respect to determining the amount of restitution to be paid by the defendant in a particular case and should exercise such discretion here. In *Pratt*, the Delaware Supreme Court determined that "[t]he defendant's ability to pay is an element to be considered in determining the amount of restitution and the schedule of

---

[17] H.B. No. 505 (Delaware 1994 Session Laws, Second Regular Session of the 137th Gen. Assembly, DE LEGIS 315 (1994), July 8, 1994).

[18] *See Gann v.* State, 31 A.3d 75 (Del. 2011) (holding that the trial court did not abuse its discretion in ordering defendant to pay restitution to the Department of Justice Medicaid Investigative Fraud Unit where defendant agreed to pay such restitution as part of his plea agreement); *see also* Redick *v. State*, 858 A.2d 947 (Del. 2004) (finding that the trial court's award of restitution to a cable provider was supported by the evidence presented at the hearing, based on sound deductive reasoning and was significantly less than the amount requested); *State v. Wilson*, 1997 WL 364027 at *5 (Del. Super. Ct. June 17, 1997) (stating that "Delaware courts have held that a sentencing court exercises considerable authority, including ample discretion to determine and order restitution.").

[19] During oral argument at the restitution hearing, the State also acknowledged that the Court maintained discretion with respect to the amount of restitution to be awarded in this case. Unedited Draft Tr. at pp. 6; 9-10; 12; 15.

payments."[20] Multiple factors may contribute to a given defendant's ability to pay, including his (i) age, (ii) job skills and training, (iii) the fact of having a criminal record, (iv) the period of incarceration, and (v) the amount of restitution.[21]

As such, this Court should consider each of the foregoing elements in determining the amount of restitution that the Defendant should pay here. The Defendant is 50 years old and graduated from college with a bachelor's degree in early education; she also completed paralegal school, although she has never worked in either of these two fields.[22] Defendant began working for her father's financial business in 1993 and was thereafter employed by her brother in the same industry as an office manager until 2017.[23] Immediately prior to her arrest in December 2017, she was working in retail for minimum wage.[24] The Defendant is currently incarcerated and will remain so until January 2021.

---

[20] *Pratt*, 486 A.2d at 1161; *see also Redick v. State*, 858 A.2d 947 (Del. 2004).

[21] *Id.* at 1161-62. ("We note that both defendants in this action are nineteen years old. Neither has any marketable job skill nor any prospect for [] future training. Both are convicted felons, will serve five years in prison, and must make substantial restitution thereafter.").

[22] Superior Court Investigative Service Report at pp. 10-13.

[23] *Id.* at 13.

[24] Unedited Draft Tr. at 16-17 ("After her arrest[,] she had a job at Boscov's making $10.50 an hour. She will never get a job like that again. [...]. She had a Class B felony on her record and she's incarcerated. She will not be able to get a decent job with a theft felony on her record. [...]. She doesn't have any money[,] she won't have any money when she gets released.").

In addition, the Court may consider the fact that the Defendant confessed to her crimes and has shown remorse. This is the Defendant's first criminal arrest and conviction and she presents a low risk for recidivism.

### III. If the Court should enter a restitution order, what is the proper restitution amount under the circumstances in this case?

#### A. Civil settlements do not preclude the State from requesting criminal restitution.

The relationship between a prior civil settlement and a later criminal restitution demand is an issue of first impression in Delaware. While it is established that criminal restitution does not preclude a party from pursuing a civil remedy,[25] the inverse of this relationship has yet to be fully explored.

The State argues that the Settlement Agreement does not bar the victims from receiving restitution in the criminal proceedings for two reasons: (i) the Settlement Agreement is limited by its terms to settling only civil claims associated with Defendant's theft and, even if the Settlement Agreement purported to limit restitution, (ii) a civil settlement agreement cannot bind this Court and limit its ordering of criminal restitution.

---

[25] *See Redick v. State*, 858 A.2d 947, 952 (Del. 2004) ("An award of restitution, based upon the evidence presented at the hearing, does not preclude a victim . . . from pursuing an action for civil damages."); *see also*, 11 *Del. C.* § 4106(e) ("An order of restitution may not preclude the victim from proceeding in a civil action to recover damages from the offender.").

With respect to its first argument, the Court agrees that by its terms the Settlement Agreement is limited to civil claims. The Settlement Agreement is like any other contract and the Court should interpret the agreement by looking at the plain meaning of its terms.[26] The Settlement Agreement unambiguously states that the parties thereto "hereby waive and forever discharge any civil claims." There is no mention of criminal or any other type of restitution and the Court will not read such a term into the Settlement Agreement.

With respect to the State's second argument, the Court agrees that the Settlement Agreement could not bind it with respect to restitution. In *Wyatt v. State*, the Delaware Supreme Court stated that

> [i]n Delaware, the victim of a crime sometimes has a civil remedy against the perpetrator of the crime and the possibility of an award by the Victim's Compensation Board, under 11 *Del.C.* ch. 90. However, these potential remedies in no way limit the conditions of probation which the sentencing court may impose. This is true where the sentences are imposed under 11 *Del. C.* §4106 and also in cases where 11 *Del. C.* §4106 does not apply.[27]

Arguably, the foregoing language can be read to support the State's view that civil settlements in no way limit a sentencing judge's discretion with respect to ordering criminal restitution.

---

[26] *DiFranco v. AAA Mid-Atl. Ins. Grp.*, 2004 WL 772080, at *2 (Del. Super Ct. Jan. 9, 2004).

[27] *Wyatt v. State*, 498 A.2d 1088, 1090 (Del. 1985) (citations omitted).

13

The Supreme Court of Florida considered the issue as to whether a civil settlement precludes an award of restitution in *Kirby v. Florida*.[28] In *Kirby*, the victim settled civil claims with the defendant. After the State of Florida brought criminal charges and demanded restitution, the defendant argued that the civil settlement should bar the Court from ordering restitution. The Supreme Court of Florida held that "[b]ecause civil settlements and criminal restitution are distinct remedies with differing considerations, [...] a [civil] settlement and release of liability on a civil claim for damages between private parties does not prohibit the trial court from fulfilling its mandatory obligation to order restitution in the criminal case."[29] The decisions of several other states comport with the holding of the Supreme Court of Florida.[30]

Such a holding is consistent with the rule that the State and a defendant cannot bind this Court in reaching a plea agreement. Superior

---

[28] *Kirby v. State*, 863 So.2d 238 (Fla. 2003).

[29] *Id.* at 240.

[30] *See New Jersey v. DeAngelis*, 747 A.2d 289, 294 (N.J. Super. Ct. App. Div. 2000) ("civil settlement or release does not absolve the defendant of criminal restitution"); *Fore v. Alabama*, 858 So. 2d 982, 985 (Ala. Crim. App. 2003) ("[p]rivate parties cannot settle a civil claim and thereby agree to waive the subsequent application of the criminal statute"); *Haltom v. Indiana*, 832 N.E.2d 969, 972 (Ind. 2005) ("allowing a civil settlement to preclude restitution altogether would infringe upon the State's power to administer criminal punishment"); *People v. Bell*, 741 N.W.2d 57, 60 (Mich. Ct. App. 2007) ("restitution must be paid ... regardless of the existence of the civil settlement"); *but see Minnesota v. Arends*, 786 N.W.2d 885, 889 (Minn. Ct. App. 2010) (The Minnesota Court of Appeals concluded "that when an alleged victim has made a complete, valid civil settlement of all claims resulting from a criminal offense, the state is precluded from seeking restitution.").

Court Criminal Rule 11(e) provides that the State can only "file a dismissal of charges" or "make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court." If the State and a defendant cannot bind the Court with a plea agreement, nor can a victim and a defendant bind the Court through a settlement agreement.

Based on the foregoing, the Court finds that a civil settlement has no bearing on the State's restitution demand, except that the civil settlement amount reduces the State's restitution demand appropriately.[31]

### B. The proper amount of restitution in this case is $93,118.72.

It is the Court's view and recommendation that the proper amount of restitution in this case is the amount calculated by the State and jointly stipulated by both parties on September 6, 2019. In compliance with Delaware law,[32] this restitution amount, $93,118.72, includes an appropriate reduction reflecting the terms of the Settlement Agreement. Although the State sought a greater restitution amount subsequent to the hearing of $183,118.72, the Court does not find that amount to be appropriate under the circumstances.

---

[31] *See State v. Bangs*, 2018 WL 1010269 at *2 (Del. Super. Ct. Feb. 21, 2018) ("However, any monies paid out as part of the civil suit that stemmed from these allegations must be credited to Defendant's restitution responsibility."); *see also* 11 *Del. C.* § 4106(e) ("A civil verdict shall be reduced by the amount of restitution paid under the criminal restitution order.").

[32] *Id.*

First, the State was given a deadline of September 4, 2019 for providing the Court with its request for restitution in this case and its calculation thereof. The State presented its calculation to the Court on August 30, 2019 in the total amount of $94,118.72. Thereafter, on the date of the hearing, counsel submitted a joint stipulation to the Court which calculated the total amount of restitution as being $93,118.72. The State advised the Court that the decrease was due to the fact that Michael Flanagan's businesses had incurred $1000.00 less in attorneys' fees.[33] The stipulation relieved the State of its burden to establish an appropriate amount of restitution by a preponderance of the evidence.[34] Accordingly, no evidence of loss was presented at the hearing. The State later comes forward, admits error, and attempts to assert a request for a much larger restitution amount without providing any evidence of such greater monetary losses nor requesting another hearing to do so. Absent such evidence, the Court cannot appropriately consider such additional amounts.

Second, even assuming *arguendo* that the State could have established such additional amounts by a preponderance of the evidence if permitted to do so by the Court after the September 6th hearing, the factors regarding

---

[33] Unedited Draft Tr. at 2.

[34] *See Benton v. State*, 711 A.2d 792, 797 (Del. 1998) ("restitution may be based on those factors which are established by a preponderance of the evidence."); *see also Redick v. State*, 858 A.2d 947 (Del. 2004).

Defendant's ability to pay weigh against awarding any amount of restitution in excess of $93,118.72. Defendant's age and job skills make the likelihood of her being able to pay in excess of $93,118.72 very slim. She has already surrendered her only asset of appreciable value (i.e. her home) pursuant to the Settlement Agreement and the fact of her felony conviction will make finding gainful employment in the future for more than minimum wage quite difficult.

Moreover, the allocation of payments from the proceeds of the sale of the home, as requested by the State and the Flanagans, makes each of Norma Flanagan and the Irrevocable Life Insurance Trust of Michael A. Flanagan Sr. completely whole, leaving Michael Flanagan, Jr.'s businesses with the shortfall. By allocating the sale of the proceeds of the house to Norma Flanagan and the Trust, the Flanagans knowingly accepted the risk that the businesses might not be made whole. Although Wealth Guardians, Inc. is a party to the Settlement Agreement, Business Prosperity LLC is not and may potentially be able to pursue a civil claim against the Defendant for its losses not compensated for by Order of this Court should it so chose.

## CONCLUSION

For all of the foregoing reasons, it is recommended that the Court (i) order restitution in the amount of $93,118.72 (the amount jointly stipulated to on September 6, 2019) be paid to Wealth Guardians, Inc. and (ii) direct that the allocation of payments from the proceeds of the sale of the family home (as contemplated by the Settlement Agreement) be as follows:

(i)     Norma Flanagan - $126,612.00

(ii)    Irrevocable Life Insurance Trust of Michael A. Flanagan, Sr. - $210,718.00

(iii)   Wealth Guardians, Inc. - $19,364.28

(iv)    Business Prosperity LLC - $0.00

It is further recommended that the amount and timing of Defendant's payments shall be determined by the Office of Probation and Parole.

**IT IS SO RECOMMENDED.**

The Honorable Janine M. Salomone

oc:    Prothonotary
cc:    Joseph E. Gibbs-Tabler, Esquire
       Patrick J. Collins, Esquire

18